## VACU–MATIC CARBURETOR CO. v. FEDERAL TRADE COMMISSION.

No. 8666.

Circuit Court of Appeals, Seventh Circuit.

Oct. 22, 1946.

As Modified on Denial of Rehearing Dec. 3, 1946.

Theodore E. Rein and Frank E. Gettleman, both of Chicago, Ill., for petitioner.

Wm. T. Kelley, Walter B. Wooden, and John W. Carter, Jr., all of Washington, D. C., for respondent.

Before MAJOR and MINTON, Circuit Judges, and BRIGGLE, District Judge.

MAJOR, Circuit Judge.

This matter is before us on a petition to review an order to cease and desist, entered by the Federal Trade Commission June 29, 1944, and predicated upon findings of fact made by the Commission. The complaint, issued April 26, 1938, charged petitioner with unfair methods of competition in commerce in violation of the Federal Trade Commission Act, 15 U.S.C.A. § 41 et seq., and after answer by the petitioner denying the material allegations of the complaint the cause proceeded to a hearing. After

considerable evidence had been heard, the Commission on June 10, 1942 issued an amended complaint, alleging that certain described representations made by the petitioner "has [have] the tendency and capacity to, and does [do], mislead and deceive a substantial portion of the purchasing public into the erroneous and mistaken belief that the representations and statements are true, and into the purchase of substantial quantities of respondent's [petitioner's] product." The charge of unfair competition made in the original complaint was thus abandoned and the hearing proceeded and was concluded upon the issue raised by the allegations of the amended complaint. The hearings were conducted by five trial examiners, four of whom on February 17, 1941 joined in a report, and two of whom on April 15, 1943 joined in what is designated as a supplemental report.

Petitioner's device concerning which the alleged false and untrue representations were made is known as a "Vacu-Matic." It is an appliance or accessory to an automobile engine consisting of a unit comprising a cylinder which contains a piston resting on a spring. The piston opens and closes at different speeds and motor loads to permit the entrance of additional air into the combustion chamber of the motor. There is a small hole in the side of the cylinder designed to permit additional air to enter the cylinder, which supposedly lessens the vacuum of the motor, resulting in less gasoline being drawn from the carburetor. This, it is claimed, results in a saving of gasoline, or to put it another way, an increased mileage from the gasoline used.

There is no occasion to relate in detail the representations made by petitioner by means of newspaper and magazine advertisements and circulars, letters and other advertising media, for the reason that petitioner does not deny, in fact it concedes, that they were made as alleged and found by the Commission. The gist of the representations is that the use of the device would result in savings of gasoline up to 30%, would improve car performance, would result in more power, quicker starting and all-round better performance.

The Commission found: "The only cases in which respondent's [petitioner's] device will affect the consumption of gasoline are those in which the fuel mixture, due to improper adjustment of the carburetor, is excessively rich (that is, contains too much gasoline in proportion to the amount of air). In such cases the small amount of additional air admitted by the device may serve to 'lean' the mixture and thereby reduce to some extent the amount of gasoline consumed. The same result could be obtained by proper adjustment of the carburetor." The Commission also found: " * * * the representations made by respondent [petitioner] with respect to its device and the results which may be accomplished through the use of the device * * * are erroneous and misleading." The Commission further found: "The use by respondent [petitioner] of these erroneous and misleading representations has the tendency and capacity to mislead and deceive a substantial portion of the purchasing public * * * and the tendency and capacity to cause such portion of the public to purchase substantial quantities of the device as a result of the erroneous and mistaken belief so engendered."

The Commission therefore concluded that the acts and practices so found are "to the prejudice of the public and constitute unfair and deceptive acts and practices in commerce within the intent and meaning of the Federal Trade Commission Act."

Petitioner enumerates a number of contested issues which may be appropriately reduced to the following: (1) That the Commission's findings are not supported by substantial evidence, and (2) that petitioner was deprived of a fair hearing, as contemplated by the laws and Constitution of the United States. The first issue in reality is confined to a single finding by the Commission, that is, that petitioner's representations that use of its device will save gasoline or increase mileage is false or erroneous. This issue is thus limited for the reason that other findings made by the Commission either are not challenged or are immaterial.

No good purpose could be served in making a detailed statement of the testimony of the numerous witnesses. It is

sufficient to state that we have examined it and are convinced that it supports the finding here challenged. We are of this view notwithstanding the rather plausible argument by petitioner that the finding should have been different. No doubt, on the basis of this record a contrary finding by the Commission could have been made. Furthermore, if it was within our province to weigh and reconcile the conflicting evidence we think we might reach a contrary result. Such is not within our province, however. The Commission is the fact finding body and this court is bound by its finding if substantially supported, as we think it is.

Briefly, a number of witnesses who had purchased and used petitioner's device testified to a marked increase in the saving of gasoline. Petitioner also introduced some so-called expert testimony to the same effect. On the other hand, the Commission introduced no testimony from any purchaser and user of petitioner's device who testified to the contrary, notwithstanding the fact that more than 200,000 had been sold to the purchasing public prior to 1940. The Commission in support of its case offered the testimony of a number of highly trained and qualified experts who had made every recognized test and who uniformly testified in substance that there was no merit in petitioner's device. The testimony of such experts does not consist merely of opinions based upon hypothetical situations or opinions formed from a mere examination of the device, as might be inferred from petitioner's brief. The most striking testimony, and we think the most convincing relied upon by the Commission, is that given as a result of tests made by the Bendix-Stromberg Carburetor Company of South Bend, Indiana, one of the country's outstanding manufacturers of carburetors. Every recognized test was made by the engineering department of this company, including the so-called road test. Typical of this testimony is that given by A. H. Winkler, senior research engineer for the Automotive Carburetor Division of Bendix, under whose supervision the Bendix tests were conducted. Winkler had had some twelve years' experience in conducting tests on carburetors and devices designed to affect the induction system of an automobile engine. Based upon such tests, Winkler reached the conclusion and so testified that "the device neither hindered nor helped the economy * * * neither hindered nor assisted in the acceleration over the standard unit * * * that no substantial saving of gas by the general public can be expected," and that "no substantial increase in mileage by the general public can be expected from its use." The testimony of Winkler and other witnesses as to the result of the Bendix test standing alone is sufficient to support the Commission's finding. In addition, there is much other testimony, some of it consisting of opinions expressed by experts, along the same line and to the same effect.

■■ Petitioner's contention that it did not have a fair hearing, as provided by the Constitution, may be disposed of with little discussion. Certainly there is no merit in the claim that it was deprived of a fair hearing because the Commission amended its complaint after considerable testimony had been taken under the original complaint. This is so even though it be assumed that the Commission by its amended complaint changed its theory and confronted petitioner with a different issue from that contained in the original complaint. Neither is there any merit in the contention that the order is improperly predicated upon a finding that such representations "have the tendency and capacity to mislead and deceive a substantial portion of the purchasing public," because the amended complaint alleged that the representations had "the tendency and capacity to and does [do] mislead and deceive a substantial portion of the purchasing public." The law is settled that a finding of "tendency and capacity to mislead" is sufficient and that actual deception need not be shown. Federal Trade Commission v. Algoma Lumber Co., 291 U.S. 67, 81, 54 S.Ct. 315, 78 L.Ed. 655; D. D. D. Corp. v. Federal Trade Commission, 7 Cir., 125 F.2d 679, 682.

■ The fact that the case was heard before five different trial examiners raises a more serious question. We think such a

practice is subject to criticism, but petitioner does not point out and we are unable to discern how it affected the result or deprived petitioner of a fair trial. No complaint is made but that petitioner was given all the rights and privileges during the course of the hearings ordinarily accorded to a litigant. Petitioner made no objection either before the hearings, during or at the time of any hearing where a substituted trial examiner presided. More than that, petitioner consented to the last substitution ordered by the Commission. So far as we are advised, the point is raised here for the first time. After all, the findings are not made by the examiners but by the Commission upon testimony as reported by the examiners.

Under the circumstances shown, we cannot say that petitioner was denied a fair hearing. The petition to review and set aside the Commission's order is denied, and a decree will be entered affirming the order to cease and desist and commanding petitioner to obey the same and comply therewith.