The BETTER BUSINESS BUREAU OF METROPOLITAN HOUSTON, INC., et al., Plaintiffs-Appellees,

v.

MEDICAL DIRECTORS, INC. and Weight Reduction Medical Centers, Inc., Defendants-Appellants.

No. 81–2069.

United States Court of Appeals, Fifth Circuit.

July 29, 1982.

Stuart M. Nelkin, Houston, Tex., for defendants-appellants.

Fred P. Westenberger, New Orleans, La., for F. W. Roberts Broadcasting Co., amicus curiae.

Richard Siluk, Baker & Botts, Alan D. Rosenthal, Houston, Tex., for plaintiffs-appellees.

Before WISDOM, JOHNSON and WILLIAMS, Circuit Judges.

JOHNSON, Circuit Judge:

A preliminary injunction restrains Medical Directors, Inc. and Weight Reduction Medical Centers, Inc. (the Center) from in any manner representing that their weight reduction program is approved by the Better Business Bureau (the Bureau). The Center vigorously denies that the ads which piqued the Bureau's ire imply that the Bureau vouches for the safety and effectiveness of the program, and asks that the injunction be lifted. We agree with the district court that the ads are misleading and affirm its decision to enjoin dissemination of such representations of endorsement. We find, however, that the protections extended to commercial speech by the first amendment require the injunction to be more narrowly drawn; the injunction is therefore affirmed as modified, 509 F.Supp. 811.

I.

The Council of Better Business Bureaus, Inc. is the governing body of a national association of licensed member Bureaus organized to further business honesty, to foster truth in advertising, and to protect the public and the business community from unfair, fraudulent, and unethical business practices. The Council's co-plaintiffs, the Better Business Bureau of Metropolitan Houston, Inc. (Houston Bureau) and the Better Business Bureau of Southeast Texas, Inc. (Southeast Bureau) are not-for-profit corporations licensed by the Council to carry out its programs in their respective territories of East Central and Southeast Texas. As member Bureaus operating un-

der the aegis of the Council, the Houston Bureau and Southeast Bureau regularly engage in investigations of the advertising and business practices of local enterprises. Investigations resulting in a determination that a practice is dishonest or misleading will result in the Bureau's call for corrective measures. The converse is not, however, the case. To maintain the public's perception of the Better Business Bureau as an impartial arbiter of fairness in commerce, the Council requires that member Bureaus refrain from endorsing or recommending any company, product or service. The Houston Bureau and the Southeast Bureau adhere to this policy.

Medical Directors, Inc. and Weight Reduction Medical Centers, Inc. are Texas corporations engaged in the operation of weight loss clinics throughout the State of Texas and other states. As a part of its advertising program the Center uses testimonials from satisfied clients. A typical ad features the photograph and personal endorsement of an individual who has completed the Center's program. The advertisements which sparked this controversy have an added dimension: they state that the satisfied clients giving their endorsements of the program, Bill and Beverly Hickman, were actually "investigators" or "spies" working "on behalf of the Better Business Bureau."

The Center published these ads in newspapers and on radio and television across several states. Their publication elicited an immediate response. Charging that the Center had made false representations in advertising violative of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) and the Texas Deceptive Trade Practices—Consumer Protection Act, V.T.C.A., Bus. & C. tit. 2, § 17.41 *et seq.*, that it had by its ads engaged in common law unfair competition,

and that its ads infringed trademarks registered to the Council, in violation of section 32 of the Lanham Act, 15 U.S.C. § 1114, the Bureau sought and won a temporary restraining order prohibiting further dissemination of the ads.

The hearing on the Bureau's pending motion for a preliminary injunction promptly followed. On due consideration, the district court found the Center's ads to "create the false and misleading impression that the Better Business Bureau stands behind the Hickmans' endorsement of [the Center's] weight reduction program, and by implication approves or endorses [the Center's] weight reduction program ...." Finding the ads to create a likelihood of confusion indicative of the Bureau's success on its Lanham Act claims, and of irreparable harm absent cessation of the Center's advertising campaign, the court granted the Bureau's motion for preliminary injunction. The order entered was considerably broader than the activity which engendered it: the Center was prohibited not only from reiterating in its advertisements the claims found offensive, but also from making any mention of the "Better Business Bureau" or the "BBB" in its advertisements, or in any other way implying that it or its programs had the Bureau's endorsement or approval. The court justified its order of complete disassociation from the Bureau's name and mark as necessary "in view of [the Center's] past practices and the likelihood of confusion and deception ..." which the ads created.

The Center appeals the district court's order. It asks that the injunction be dissolved, tenaciously arguing its ads to be neither false nor misleading; failing that, it asks the scope of the injunction to be trimmed to prohibit only statements determined to be deceptive.[1] We consider the arguments in turn.

1. A third argument raised by the Center need not long detain us. The Center claims that the district court granted the injunction on a critical misapprehension of the controlling law. Pointing to a single comment made by the court in the course of the hearing, the Center contends that the court focused solely and erroneously on whether its use of the Bureau's

federally protected marks was without Bureau authorization; having thus recharacterized the premises of the court's decision, it claims a first amendment right to incorporate the Bureau's marks in its commercial expression. It is the Center that errs in its premise. The findings of fact and conclusions of law entered in support of the injunctive order show clearly the court's

## II.

Central to a finding of false representations in advertising violative of section 43(a) of the Lanham Act (the Act)[2] is a determination that the challenged activities create a "likelihood of confusion" in the consuming public, *Sun Fun Products, Inc. v. Suntan Research & Development, Inc.*, 656 F.2d 186, 192 (5th Cir. 1981), as to, *inter alia*, the product's endorsement by the plaintiff, *Supreme Assembly, Order of Rainbow for Girls, v. Ray Jewelry Co.*, 676 F.2d 1079 at 1082, 1085 (5th Cir. 1982); *Kentucky Fried Chicken Corp. v. Diversified Packaging Corp.*, 549 F.2d 368, 388 (5th Cir. 1977). Representations are not shielded from condemnation under section 43(a) simply because they are literally true. The Act's proscriptions against false representation reaches "innuendo, indirect intimations, and ambiguous suggestions evidenced by the consuming public's misapprehension of the hard facts underlining an advertisement," *Vidal Sassoon, Inc. v. Bristol-Myers Co.*, 661 F.2d 272, 277 (2d Cir. 1981), as well as "blatant falsehoods," *id.; accord, Chevron Chemical Co. v. Voluntary Purchasing Groups, Inc.*, 659 F.2d 695 (5th Cir. 1981).

A determination that a challenged representation raises a likelihood of confusion is a question of fact; as such, it is susceptible to reversal only if clearly erroneous. *Supreme Assembly* at 1082; *Chevron* at 703. Because appreciation of the circumstances of the contested representation is necessary to assessment of the likelihood of deception, *Chevron* at 703–705;

*Sun-Fun* at 189, 192, a review of the Hickmans' contacts with the Bureau and Center is in order.

The Hickmans' contact with the Center began when Beverly gave Bill as a Father's Day gift a program of treatment at the Center's facility near their home in Beaumont, Texas. Bill Hickman, a self-described skeptical consumer, checked the reputation of the program with the Beaumont office of the Southeast Bureau before beginning treatment. When he found that the Southeast Bureau had little information about the Center in its files, he offered to furnish it with periodic reports on his experiences in the weight-loss program. The Bureau regularly accepts information from the consuming public as raw data on the practices of local businesses, and readily agreed to take what information Hickman cared to volunteer. Hickman made several reports to the Bureau over the next few weeks.

The reports were favorable. Over the three weeks during which he participated in the Center's weight-loss program, he lost thirty-three pounds. Beverly Hickman, who also joined the program, lost fifteen pounds over the same period. After he completed the program, Hickman mentioned to a member of the Center's staff that he had been keeping the Bureau apprised of his progress. Very shortly thereafter, the Center asked the Hickmans to appear in testimonial advertisements for its program. The Hickmans agreed to give their endorsements.

The text of the ads prepared by the Center claim that the Hickmans engaged in a

---

proper appreciation of the issue before it as whether the Center's use of the Bureau's marks falsely imply the Bureau's approval or endorsement of the Center's weight reduction program. Analysis of the first amendment issues raised by the court's order of injunctive relief must proceed in the context of the court's determinations of deception in commercial speech.

2. Section 43(a) of the Lanham Act, 15 U.S.C.A. § 1125(a) (1982), provides in pertinent part:
   Any person who shall affix, apply, or annex, or use in connection with any goods or services ... any false description or representation, including words or other symbols tending falsely to describe or represent the

same, and shall cause such goods or services to enter into commerce ... shall be liable to a civil action ... by any person who believes he is or is likely to be damaged by the use of any such false description or representation. Our affirmance under this section of the district court's decision to issue a preliminary injunction obviates the need to consider the several challenges raised, by the Center to the Bureau's theory of relief under § 32 of the Lanham Act, 15 U.S.C. § 1114, trademark infringement, the Texas Deceptive Trade Practices-Consumer Protection Act, V.T.C.A., Bus. & C. § 17.41 *et seq.*, and common law unfair competition.

"personal investigation for the Better Business Bureau" and discovered that the program "really works." The newspaper ad, reprinted below, was headed with the attention-grabbing phrase "BBB SPY" printed in large type above a photograph of Bill Hickman; the television spots, featuring both Bill and Beverly Hickman, were overlaid with the words "BBB INVESTIGATORS." After the television commercials were taped, but before any of the ads were published, the Center's advertising director initiated and taped a telephone conversation with the executive vice president of the Southeast Bureau regarding the Bureau's involvement with Hickman's investigation. Under questioning by the Center's advertising director, the Bureau official clearly, emphatically, and repeatedly stated that Hickman was not acting under the aegis of the Bureau when he undertook his investigation, that the Bureau received only the information Hickman volunteered to it, and that the Bureau did not approve or endorse the Center's weight-loss program. Only when pressed for a characterization of Hickman's relationship with the Bureau did the Bureau official state that the Center's advertising director's description of it as a "personal investigation on the Better Business Bureau's behalf" was "more or less" correct. The ads were thereupon run in Texas, Louisiana, and Arizona. The Bureau disclaimed them and took steps to secure their withdrawal immediately upon becoming aware of their publication.

402

# BBB SPY

## LOSES 33 LBS. IN ONLY 3 WEEKS!
### AFFIDAVIT ON FILE

BILL HICKMAN AFTER LOSING 33 LBS.

Before Photo

While conducting a personal investigation on behalf of the Better Business Bureau on Weight Reduction Medical Centers, Bill Hickman found out the program really works...without exercising or fad diets and it was quick, easy and safe. Let the doctors and nurses help you to lose up to 1½ pounds per day, every day!

CALL 8AM-7PM MON.-FRI. FOR YOUR FREE CONSULTATION

WEIGHT REDUCTION

## MEDICAL CENTERS®
A NORWEL CO

72 LOCATIONS NATIONWIDE

# 831-2111

### PHOENIX

North Phoenix • Glendale • Metro Center
South Phoenix • Scottsdale • Tempe
Mesa • Fiesta Mall
In Tucson phone 622-2244

VISA

On review of this series of events, the district court concluded that the Hickmans had never been authorized to act as investigators for any Better Business Bureau, and that Bill Hickman stood in the same position as any other consumer who provides information to the Bureau. It found in the Center's representations of the Hickmans as personal investigators for the Bureau a false and misleading suggestion that the Bureau approved the Center's program. It concluded that this implication was likely to confuse the public and injure the Bureau's representation of impartiality.

The Center's primary attack on these findings focuses on the type of evidence adduced at the hearing. The Bureau relied heavily on the Center's advertisements themselves to create the inference of endorsement of which it complains. The Center contends that a likelihood of public confusion cannot be found absent proof of actual consumer confusion. The Center is in error. Actual consumer confusion may be the best indicator of the existence of a likelihood of deception, but it is not the only indicator. *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 263 (5th Cir. 1980); *Roto-Rooter Corp. v. O'Neal*, 513 F.2d 44, 46 (5th Cir. 1975). The advertisements themselves clearly imply that the Hickmans acted at the behest and under the direction of the Bureau, and that they found the Bureau's standard satisfied. They need not be interpreted for the Court. *Chevron* at 704–705; *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200, 204 n.7 (2d Cir. 1979); *Beef/Eater Restaurants, Inc. v. James Burrough Ltd.*, 398 F.2d 637, 639 (5th Cir. 1968). The impression is reinforced by the context in which the representations were made. The Center's reference to the Bureau's investigative function calls to mind the Bureau's central purpose of encouraging honesty and exposing deception in commercial transactions. The Bureau's name is used in precisely the type of situation with which it normally would be affiliated, *Chevron* at 703; *Sun-Fun* at 191–92; *Professional Golfers Association v. Banker's Life & Casualty Co.*, 514 F.2d 665, 670 (5th Cir. 1975); *compare Stop the Olympic Pris-*

*on v. United States Olympic Committee*, 489 F.Supp. 1112 (S.D.N.Y.1980) (use of the familiar interlocking circles in a drive to halt the construction of a federal prison a use so different from its normal association that no deception could be found likely); *Girl Scouts of the United States v. Personality Posters Manufacturing Co.*, 304 F.Supp. 1228 (S.D.N.Y.1969) (concluding that a poster depicting a uniformed, pregnant Girl Scout and the slogan "Be Prepared" was so incompatible with the wholesome image of the Girl Scouts that public confusion was unlikely); the inference of endorsement arising from this use is a strong one.

On consideration of these indicia of deception, we can by no means say that we are left with the "definite and firm conviction that a mistake has been committed," *United States v. United States Gypsum Co.*, 333 U.S. 364, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948). We affirm the district court's conclusion that the Bureau showed a probability of success on the merits, and conclude with that court that the significant likelihood that the public may be led to believe that the Bureau has placed its imprimatur on the Center's program poses a threat of irreparable injury to the Bureau's carefully cultivated reputation of independence. The issuance of the preliminary injunction was proper.

### III.

We turn now to consideration of the propriety of the terms of restraint ordered by the district court. The preliminary injunction is as follows:

IT IS THEREFORE ORDERED that Defendants, Medical Directors, Inc. and Weight Reduction Medical Centers, Inc., their officers, agents, servants, employees, attorneys, successors and assigns, and all persons in active concert or participation with any of them who receive notice of this injunction by personal service or otherwise, are hereby enjoined, pending the outcome of a trial on the merits, from engaging in any of the following activities:

1. Representing or implying in any manner, directly or indirectly, or committing any act which is calculated or likely to cause third parties to believe, that Defendants or their weight reduction centers or services have the endorsement or approval of Plaintiffs or of the Better Business Bureau or their representatives;

2. Causing or permitting to be published or broadcast any advertisements or other statements representing or implying in any manner, directly or indirectly, that Defendants or their weight reduction centers or services have the endorsement or approval of Plaintiffs or of the Better Business Bureau or their representatives;

3. Representing or implying in any manner, directly or indirectly, through any statements, suggestions or omissions or through the use of any affidavits or other documents, that either Bill or Beverly Hickman is or has been an investigator for the Better Business Bureau (including, without limitation, that either of the Hickmans has conducted an investigation for a "National Consumer Protection Agency" or any similarly designated group intended to refer to the Better Business Bureau), that either of them has ever been authorized to act as an investigator on behalf of the Better Business Bureau, or that either of them has conducted an investigation of Defendants or their weight reduction centers or services on behalf of the Better Business Bureau; and

4. Using or causing to be used either of the designations "Better Business Bureau" or "BBB," or any other designation similar thereto, in connection with the advertising or promotion of any of Defendants' weight reduction centers or services.

■ To the extent that the injunction prohibits the continued publication of statements adjudicated false and misleading, we find no fault. False and misleading representations in advertising are not shielded by the first amendment; as "unprotected speech," such statements may be banned entirely. *Bates v. State Bar of Arizona*, 433 U.S. 350, 97 S.Ct. 2691, 2709, 53 L.Ed.2d 810 (1977); *Virginia Pharmacy Board v. Virginia Consumer Council*, 96 S.Ct. 1817, 1830–31 (1976). But the restraints imposed on the Center well exceed the scope of conduct adjudicated misleading. Certain prohibitions may be read to prohibit noncommercial as well as commercial representations. More troubling yet is the blanket ban imposed by paragraph 4 on any reference whatsoever to the Bureau in the Center's advertising. Compliance with that restriction would require complete suppression of even the concededly truthful information that the Bureau received favorable reports on the Center's weight-loss program from satisfied Center client Bill Hickman. The district court justified its prohibitions on the ground that the Center's deceptive practices demand a complete disassociation from the Bureau. We do not agree that in this case so drastic a remedy accords with the first amendment.

The district court apparently relied on precedents holding that where an egregious pattern of deceptive trade practices has been observed, prophylactic and therapeutic, as well as protective, restraints may be imposed. Histories of "improper behavior," *Kentucky Fried Chicken* at 390, and "indefensible conduct," *id.* at n.28, resulting in adjudications of unfair competition and false advertising, *Chevron* at 705, have in those cases been held ample reason for proscription of "activities that, standing alone, would be unassailable," *id., citing United States v. Loew's, Inc.*, 371 U.S. 38, 83 S.Ct. 97, 106, 9 L.Ed.2d 11 (1962).

■ But neither *Chevron* nor *Kentucky Fried Chicken* sanctioned restraints on dissemination of accurate, factual information. The widened scope of prohibition there approved limited only the infringing organizations' freedom to design their product packaging in ways identical to or reminiscent of those of the complaining corporations; the defendants made no claim that the limitations imposed effected a consequent restric-

tion of commercial expression. The issue raised by the district court's restriction on the content of the Center's advertisements is, on the other hand, precisely one of commercial speech: whether an initial determination of deception in advertising may, in a manner consonant with the first amendment, warrant an absolute prohibition on all further statements containing reference to the same topic. Well-articulated principles delineating the protections to commercial expression say not.

■ In its recent decision of *In the Matter of R_____. M. J._____, Appellant*, ___ U.S. ___, 102 S.Ct. 929, 71 L.Ed.2d 64 (1982), the Supreme Court capsulized the commercial speech doctrine:

> Truthful advertising related to lawful activities is entitled to the protections of the First Amendment. But when the particular content or method of the advertising suggests that it is inherently misleading or when experience has proven that in fact such advertising is subject to abuse, the [government] may impose appropriate restrictions. Misleading advertising may be prohibited entirely. But the [government] may not place an absolute prohibition on certain types of potentially misleading information . . . if the information also may be presented in a way that is not deceptive. Thus, the Court in *Bates* suggested that the remedy in the first instance is not necessarily a prohibition but preferably a requirement of disclaimers or explanation . . . . [Even in circumstances where] the potential for deception and confusion is particularly strong . . . , restrictions upon such advertising may be no broader than reasonably necessary to prevent the deception.

102 S.Ct. at 937 (citation omitted). We agree with the district court that, in view of the Bureau's traditional functions and the nature of the relationships among it, the Hickmans, and the Center, references to the Bureau made in the course of the Center's advertisement of its weight reduction program may be particularly susceptible to misunderstanding. But at least as an initial matter, the appropriate remedy is not less speech, but more. *Id.* at 936; *Bates*, 97 S.Ct. at 2704. Accordingly, the fourth paragraph of the injunction shall be modified to require only that references to the Bureau contained in the Center's advertising contain a prominent disclaimer of the Bureau's endorsement of the Center or its program.

Paragraphs 1 and 3 of the injunction exceed the scope of the district court's findings so far as they may be read to prohibit statements other than those made in furtherance of the Center's commercial objectives. The statements were found likely to violate the Lanham Act through their probable effect on consumers. As "restrictions . . . may be no broader than reasonably necessary to prevent the deception," *R_____ M. J._____*, 102 S.Ct. at 937, the injunction must be narrowed.

The injunction as modified shall read:

IT IS THEREFORE ORDERED that Defendants, Medical Directors, Inc. and Weight Reduction Medical Centers, Inc., their officers, agents, servants, employees, attorneys, successors and assigns, and all persons in active concert or participation with any of them who receive notice of this injunction by personal service or otherwise, are hereby enjoined, pending the outcome of a trial on the merits, from engaging in any of the following activities:

1. With the intention of furthering the Defendants' commercial objectives, representing or implying in any manner, directly or indirectly, or committing any act which is calculated or likely to cause third parties to believe, that Defendants or their weight reduction centers or services have the endorsement or approval of Plaintiffs or of the Better Business Bureau or persons described as their representatives;

2. Causing or permitting to be published or broadcast any advertisements or other statements representing or implying in any manner, directly or indirectly, that Defendants or their weight reduction centers or services have the endorsement or approval of Plaintiffs or of the

Better Business Bureau or persons described as their representatives;

3. Causing or permitting to be published or broadcast any advertisements or other statements representing or implying in any manner, directly or indirectly, including but not limited to suggestions or omissions, or through the use of any affidavits or other documents, that either Bill or Beverly Hickman is or has been an investigator for the Better Business Bureau (including, without limitation, that either of the Hickmans has conducted an investigation for a "National Consumer Protection Agency" or any similarly designated group intended to refer to the Better Business Bureau), that either of them has ever been authorized to act as an investigator on behalf of the Better Business Bureau, or that either of them has conducted an investigation of Defendants or their weight reduction centers or services on behalf of the Better Business Bureau; and

4. Using or causing to be used either of the designations "Better Business Bureau" or "BBB," or any other designation similar thereto, in connection with the advertising or promotion of any of Defendants' weight reduction centers or services, unless in such advertisement or promotion there is set forth in a prominent manner appropriate to the media the following disclaimer: "The Better Business Bureau does not approve or endorse the Weight Reduction Medical Centers or their weight reduction program."

### IV.

Agreeing with the district court that the Center's ads are misleading, we affirm its decision preliminarily to enjoin their dissemination. The terms of the injunction are modified to comport with the protections extended to commercial speech by the first amendment.

AFFIRMED AS MODIFIED.