### STATE of Maine

v.

### BOB CHAMBERS FORD, INC.

Supreme Judicial Court of Maine.

Argued Nov. 20, 1986.
Decided March 10, 1987.

James E. Tierney, Atty. Gen., James A. McKenna (orally), Stephen L. Wessler, Asst. Attys. Gen., Augusta, for plaintiff.

Fitzgerald, Conley & Haley, Mark L. Haley, (orally), Constance P. O'Neil, Duane D. Fitzgerald, Bath, for defendant.

Joy Cantrell, Preti, Flaherty & Beliveau, Portland, for amicus curiae Maine Auto. Dealers' Assn.

Before NICHOLS, ROBERTS, GLASSMAN and CLIFFORD, JJ.

GLASSMAN, Justice.

The Attorney General brought this civil action against Bob Chambers Ford, Inc. (Chambers) pursuant to Maine's Unfair Trade Practices Act (UTPA), 5 M.R.S.A. §§ 206–214 (1979 & Supp.1986). Following a nonjury trial the Superior Court, Kenne-

bec County, found that Chambers engaged in unfair trade practices. The court ordered relief for Chambers' customers and payment by Chambers of $2,500 to the State toward its costs of investigation. Chambers appeals contending that some of the claims were barred by a four-year statute of limitations, the requirements for relief under the UTPA were not met, and the relief granted the customers and the payment of investigation costs to the State exceeded the court's power under the UTPA. We vacate the award to the State of investigation costs and as modified affirm the judgment.

## I.

Chambers operates two car dealerships in Augusta. Between 1976 and 1982 these dealerships sold approximately 6,700 automobiles, 4,200 of which were rustproofed by Chambers. Beginning in 1979, the Attorney General's office began to receive complaints concerning the adequacy of Chambers' rustproofing applications. The number of such complaints prompted the Attorney General's office to begin a formal investigation that culminated in a complaint being filed against Chambers in 1982 pursuant to section 209.

The trial court found that although the evidence would not support a finding that Chambers had a conscious purpose to perpetrate a fraud on consumers, it did support the court's finding that Chambers engaged in a pattern of unfair and deceptive practices in the conduct of trade or commerce. The unfair practices included failure to adequately rustproof, failure to adequately train rustproofers, failure to provide adequate tools and manuals and supervision for rustproofing, failure to establish quality control procedures, and failure to conduct adequate follow-up rustproofing inspections. The Superior Court further found that, although the Rusty Jones rustproof warranty complied with Maine law and was fair, the Sym Tech and Chambers warranties issued to customers *during* the period from 1976 to 1982 were illusory and deceptive, containing limitations on consumer remedies that contravene Maine law.

The court ordered that Chambers was required to notify customers who had purchased rustproofing between February 1976 and February 1982 that it may be inadequate and to offer a free inspection. If the inspection reveals inadequate rustproofing, Chambers must offer a choice of rerustproofing or a refund of the original price of the rustproofing but no less than $125 with interest from the date of the complaint. Chambers is also required to notify holders of the Bob Chambers Ford rustproofing warranties that the warranty limitations are not enforceable. The court further ordered that Chambers pay $2,500 to the State toward costs of investigation. Chambers filed a timely notice of appeal.

## II. Statute of Limitations

Chambers argues that the court's finding that the Chambers rustproofing warranties unlawfully limited the customers' remedies was also a finding that the warranties were in violation of certain sections of the Uniform Commercial Code (UCC), 11 M.R.S.A. §§ 1–101 to 2–725 (1964 & Supp.1986), and therefore the trial court erred in not applying the four-year statute of limitations provision of 11 M.R.S.A. § 2–725 to the claims of the customers in this case. We disagree. The elements of an unfair trade practice are substantively different than the elements for a simple breach of warranty under the UCC. To be a violation of 5 M.R.S.A. § 207 it is not enough that the act or practice be a violation of a particular statute, it must also be unfair or deceptive. *See State ex rel. Tierney v. Ford Motor Company*, 436 A.2d 866, 873 (Me.1981). Here, the trial court found various commercial or trade practices of Chambers to be unfair and deceptive in violation of the UTPA. Accordingly, the trial court properly held that the six-year statute of limitations established by 14 M.R.S.A. § 752 (1980) applies.

## III. Intent to Deceive

Chambers contends that the UTPA requires the State to prove intentional fraud before remedial relief can be ordered for Chambers' injured customers pursuant to 5 M.R.S.A. § 209. Chambers argues that the

requirement in 5 M.R.S.A. § 207(1)[1] that the courts look to federal precedent to determine which acts violate the UTPA requires that any remedy afforded by the court under section 209 is governed by 15 U.S.C.A. § 57b (Supp.1986).[2]

██ In keeping with federal decisions, we have stated that a method, practice or act may be deceptive and thus violative of section 207 even though the defendant has no intent to deceive. *Bartner v. Carter*, 405 A.2d 194, 200 (Me.1979). Section 209 incorporates section 207 by providing that the Attorney General may bring an action seeking relief for persons who suffered a loss by reason of "any method, act or practice declared by section 207 to be unlawful." Thus, while it is clear that section 207(1) instructs Maine courts to look to federal precedent in determining whether a particular trade practice or act is "unfair or deceptive" and section 209 allows the Attorney General to seek relief for violations of section 207, neither section has an intentional fraud requirement. The language of both sections is clear and unambiguous. Accordingly, the trial court did not have to find there was intentional conduct on the part of Chambers to perpetrate a fraud on the customers as a prerequisite to granting remedial relief pursuant to section 209.

## IV. Ascertainable Loss

Chambers also asserts that the State failed to establish the existence of an ascertainable loss. It contends that because rustproofing of an automobile was frequently included in the total sales price, it cannot be determined on this record that the customer who did not pay a separate price for rustproofing suffered an ascertainable loss. In a related argument Chambers contends that the customer's receipt of a warranty for the rustproofing prohibited the trial court from ordering the relief granted to the customers. It bases this argument on the grounds that (1) the court could not determine the value of the rustproofing warranty, (2) because Rusty Jones pursuant to its warranty would repair rust damage, customers holding a Rusty Jones warranty suffered no loss even though Chambers applied no rustproofing, and (3) because the Bob Chambers warranty required a follow-up inspection within 2 years or 20,000 miles, no recovery should be allowed a customer who failed to have his automobile inspected within that time frame. We disagree.

5 M.R.S.A. § 209 allows the courts to restore money or property acquired by means of an unfair trade practice to persons who "suffered any ascertainable loss" due to the unfair practice.[3] Thus, "any ascertainable loss" is a threshold requirement that must be met before any individual may be eligible for court-ordered relief. In this case the trial court's order limits relief to customers who paid for rustproof-

---

1. 5 M.R.S.A. § 207 (1979) provides in pertinent part:

    Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are declared unlawful.

    **1. Intent.** It is the intent of the Legislature that in construing this section the courts will be guided by the interpretations given by the Federal Trade Commission and the Federal Courts to section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. 45(a)(1)), as from time to time amended.

2. 15 U.S.C.A. § 57b provides, *inter alia,* that federal courts are authorized to grant equitable relief for injuries resulting from unfair or deceptive practices "[i]f the Commission satisfies the court that the act or practice to which the cease and desist order relates is one which a reasonable man would have known under the circumstances was dishonest or fraudulent...."

3. In relevant part section 209 (1979 & Supp. 1986) states:

    Whenever the Attorney General has reason to believe that any person is using or is about to use any method, act or practice declared by section 207 to be unlawful, and that proceedings would be in the public interest, he may bring an action in the name of the State against such person to restrain by temporary or permanent injunction the use of such method, act or practice and the court may make such orders or judgments as may be necessary *to restore to any person who has suffered any ascertainable loss* by reason of the use of employment of such unlawful method, act or, practice, any moneys or property, real or personal, which may have been acquired by means of such method, act or practice.... (Emphasis added).

ing but received inadequate or no rust-proofing as revealed by a court ordered inspection.

■ There was evidence before the trial court that customers who had not negotiated a "package" price for a vehicle purchased from Chambers paid between $135 and $165 for the rustproofing. Customers who had negotiated paid less and rustproofing was often "included" in the price of the automobile or "thrown in" by Chambers. It was the trial court's task to determine the fair market value of the rustproofing included in the total purchase price of a car. A fair market value may be established by approximation as long as the fact finder can reach a specific conclusion. *Doane v. Pine State Volkswagen, Inc.*, 377 A.2d 481, 485 (Me.1977). Here, the $125 figure for restitution to customers who negotiated a "package" price is well within the range of the price of rustproofing established by the evidence. The trial court properly found that it reflects the amount of money acquired by Chambers when as a part of the price paid by its customers for a vehicle it also sold materially defective rustproofing.

■ Whether the express warranty that accompanied the purchase of rustproofing has an independent value and the existence of a Rusty Jones rustproofing warranty is irrelevant in this case. A warranty does not prevent a loss but merely offers one possible avenue of redress. The trial court properly determined the restitution due customers pursuant to section 209. It was not necessary to such determination that a separate value be established for the rustproofing warranty or that the court consider what avenue of redress might be pursued by any particular customer who had purchased defective rustproofing from Chambers.

■ Chambers does not challenge the trial court's specific finding that Chambers' *failure to conduct* adequate follow-up rustproofing inspections was one of the components of its violation of section 207. Instead, it argues that a customer who holds a Chambers warranty should not be allowed recovery for inadequate rustproofing if the customer had failed to return the vehicle to Chambers for a later inadequate inspection of the vehicle. We find no merit in this argument. The trial court properly concluded that customers who had paid Chambers for an inadequate rustproofing of their vehicles were injured independent of the return of their vehicles for warranty inspections.

## V. Prejudgment Interest

■ Chambers also challenges the award of statutory interest to the recipients of restitution. It argues that interest is not properly a part of restitution under section 209 because any unjust enrichment to Chambers cannot be determined with certainty. We find no merit in this contention. We note that interest was not awarded from the time Chambers received the money for the faulty rustproofing of any given vehicle. In this civil action the trial court properly provided that statutory interest could be recovered by a customer who prevailed in his claim of damages. *See* 14 M.R.S.A. §§ 1602, 1602–A (Supp.1986).

## VI. Rerustproofing

Chambers contends the Superior Court's order providing for rerustproofing of inadequately rustproofed vehicles as a remedial option exceeds the court's power under section 209. We disagree.

The UTPA vests the trial court with considerable discretion to fashion an equitable remedy once a finding of unlawful trade practices has been made. *See* 5 M.R.S.A. § 209 (Supp.1986). *See also Commonwealth v. DeCotis*, 366 Mass. 234, 316 N.E.2d 748, 756 (1974) (construing Mass. Ann.Laws c. 93A, § 4 (Law.Coop.1985)). Once a court has taken jurisdiction of a cause in equity and reached a decision, the court should and must fashion appropriate remedies to do complete justice. *Common Cause v. State*, 455 A.2d 1, 12 (Me.1983). The court's equitable powers assume an

especially broad and flexible character when, as here, the public interest is involved. *See Porter v. Warner Holding Co.,* 328 U.S. 395, 398, 66 S.Ct. 1086, 1089, 90 L.Ed. 1332 (1946). Unless a statute restricts the court's jurisdiction in equity, the full scope of that jurisdiction may be exercised. *Id.*

■ We find further support for the Superior Court's construction and application of section 209 in the purpose and policy of the UTPA. *See Eastern of Maine, Inc. v. Vintners Group Ltd.* 455 A.2d 936, 941 (Me.1983); *Schwanda v. Bonney,* 418 A.2d 163, 165–66 (Me.1980). The UTPA, by providing for actions by the Attorney General, seeks to provide an efficient, inexpensive and broad solution to the alleged wrong. *See* 5 M.R.S.A. §§ 209, 213; *Commonwealth v. DeCotis,* 366 Mass. 234, 316 N.E.2d 748, 756 (1974). We conclude that section 209 does not preclude an order such as the one made by the Superior Court in this case. The rerustproofing option merely restores to customers the value, in service and material rather than cash, unjustly retained by Chambers by means of its inadequate rustproofing practices.

The Superior Court's order providing for rerustproofing at the option of the injured customer was within its equitable powers as contemplated by the UTPA.

### VII. Investigation Costs

■ Finally, we agree with Chambers that the award of $2,500 for the State's investigation costs must be vacated. 5 M.R.S.A. § 209 (Supp.1986) provides: "In any action under this section where a permanent injunction is issued, the court may order the person against whom the permanent injunction has been issued to pay to the State the costs of the investigation of that person by the Attorney General...." The Superior Court specifically denied the State's request for a permanent injunction. The statute clearly provides for investigation costs only when a permanent injunction issues.

The entry is:

Judgment modified by vacating the award to the State of investigation costs and as modified affirmed.

All concurring.