STATE ex rel. Jeremiah W. NIXON,
Attorney General,[1] Respondent,

v.

TELCO DIRECTORY PUBLISHING,
d/b/a Telco National Business Directory,
and Scott Wilcox, Appellants.

No. 75356.

Supreme Court of Missouri,
En Banc.

Sept. 28, 1993.

Rehearing Denied Oct. 26, 1993.

1. This case was begun while William Webster was attorney general. Jeremiah Nixon is now attorney general and is substituted for Mr. Webster pursuant to Rule 52.13(d).

Walter M. Henritze, Frank J. Shannon, Atlanta, GA, Keith W. Brunstrom, Jefferson City, for appellants.

Jeremiah W. (Jay) Nixon, Atty. Gen., Anne E. Schneider, Asst. Atty. Gen., Jefferson City, for respondent.

ROBERTSON, Judge.

In *State v. Shaw*, 847 S.W.2d 768 (Mo. banc 1993), this Court upheld the constitutionality of the criminal penalties imposed by Section 407.020.3, RSMo 1986, for a violation of Section 407.020.1, RSMo 1986, against a vagueness challenge. In this case, we consider a similar constitutional challenge to Section 407.100.6, RSMo 1986. That statute permits a trial court to impose civil penalties for a violation of Section 407.020.1.

The trial court found that appellants had violated Section 407.020.1, enjoined appellants from further use of a particular advertising device, and imposed civil penalties. Appellants appealed to the Court of Appeals, Western District, claiming, among other things, that Section 407.100.6 violates the Due Process Clause of the United States Constitution. U.S. Const., Amend. XIV. As a result of the constitutional issue, the court of appeals transferred the case to this Court. We have jurisdiction, Mo.Const. art. V, § 3, reverse the judgment of the trial court and remand for further proceedings. Aside from the constitutional issues, we address only those issues relevant on remand.

**I.**

Scott D. Wilcox does business as Telco Directory Publishing, a sole proprietorship. Wilcox publishes the Telco National Business Directory, a directory that includes listings in various business and professional categories. To further his sales efforts, Wilcox designed and mailed a solicitation to potential customers across the country. Those who purchased the directory automatically received a free listing in the directory for the next year.

In October, 1986, Wilcox mailed a number of his solicitations to persons and businesses in Missouri. Fifty-five Missouri businesses and individuals purchased the directory. Ten other individuals, who received the solicitation but did not purchase the directory, complained to the Attorney General's Office about the deceptive nature of the solicitation they received.

The solicitation appears in full in Appendix A. It consists of a single sheet of paper printed to bear a resemblance to an invoice. The paper is perforated so that the top can be detached and returned in an envelope that accompanied the solicitation. The front side of the bill also includes the words, "This is not an invoice. Use this form to place your order," in bold black letters immediately above the perforation.

The backside of the solicitation sets forth the full terms of the solicitation, including the explanation that the amount requested on the front is payment for a directory and that purchase of the directory entitles the purchaser to a free listing in the next year's directory. The wording on the backside of the form is not susceptible to misinterpretation. However, it is printed in light gray ink. Wilcox testified that he used the light gray ink to avoid "bleed through." Persons who received the solicitation testified that the light colored ink made the back difficult to read.

Upon receiving the complaints, the attorney general filed an action under Sections 407.100.1 and 407.100.6 seeking an injunction against Wilcox and civil penalties. At trial,

the attorney general presented live testimony of two witnesses and deposition testimony of eight others. The individuals all testified about their office practices, the details of their receipt of this solicitation, and the impressions the solicitation made on them. All of the witnesses initially believed that the solicitation was a bill of some sort. However, all of the witnesses also discovered that the solicitation was not a bill, although some did so only after their secretaries read it more carefully. None of the witnesses purchased a directory.

The trial court entered findings of fact and conclusions of law. The trial court believed that the solicitation had the "capacity to deceive." Based on this standard, the trial court found that the solicitation was a "deception" in violation of Section 407.020.1. The trial court enjoined Wilcox from using the words "final notice" without a further explanation of the nature of the final notice and from using a solicitation format that caused the reader to believe the solicitation was a bill or an invoice. The court also imposed fines totalling $10,000 and ordered Wilcox to pay the merchandising practices revolving fund the costs of prosecution. This appeal followed.

## II.

▮ Wilcox raises two preliminary jurisdictional points. First, he asserts that neither the Missouri long-arm statute nor the Due Process Clause of the Fourteenth Amendment permits Missouri courts to exercise personal jurisdiction over him. Second, he argues that Article I, Section 8, Clause VII of the United States Constitution preempts any attempt by the state to regulate the use of the United States mails.

In *State ex inf. Danforth v. Reader's Digest Association, Inc.,* 527 S.W.2d 355, 358 (Mo. banc 1975), this Court resolved the issues raised by appellants in this case against appellants. We reaffirm that decision, holding again that Missouri may properly exercise personal jurisdiction over Wilcox and may regulate unfair and deceptive merchandising practices even when the relevant matters are sent through the mails. The first two points are denied.

## III.

In pertinent part, the statutes at issue here are set out.

Section 407.020.1, RSMo 1986, provides that:

The act, use or employment by any person of any deception, fraud, false pretense, false promise misrepresentation, unfair practice or the concealment, suppression or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce ... in or from the state of Missouri, is declared to be an unlawful practice.... Any act, use or employment declared unlawful by this subsection violates this subsection whether committed before, during or after the sale, advertisement or solicitation.

Section 407.100 provides that:

1. Whenever it appears to the attorney general that a person has engaged in, is engaging in, or is about to engage in any method, act, use, practice or solicitation, or any combination thereof, declared to be unlawful by this chapter, he may seek and obtain, in an action in a circuit court, an injunction prohibiting such person from continuing such methods, acts, uses, practices, or solicitations, or any combination thereof, or engaging therein, or doing anything in furtherance thereof.

\* \* \* \* \* \*

6. The court may award to the state a civil penalty of not more than one thousand dollars per violation....

Section 407.130 provides that:

In any action brought under the provisions of section 407.100, the attorney general is entitled to recover as costs, in addition to normal court costs, the costs of the investigation and prosecution of any action to enforce the provisions of this chapter.

### A.

Wilcox assigns error to the trial court's judgment claiming that the attorney general failed to meet certain prerequisites to relief commonly required in nonstatutory actions.

**1.**

First, Wilcox argues that the attorney general may not obtain relief under Section 407.100 unless he first exhausts all alternative remedies. Section 407.100 does not impose any requirement that the attorney general pursue other remedies first. To impose such a requirement by judicial fiat would conflict with the plainly expressed intent of the legislature that the attorney general be free to choose from several statutory options to remedy unlawful merchandising practices quickly, fairly, and efficiently. The point is denied.

**2.**

Second, Wilcox assumes that an action under Section 407.100 is a traditional equitable action and argues that the trial court erred in issuing its injunction under Section 407.100 absent proof by the state that no adequate legal remedy exists. An action under Section 407.100 is a statutory action, not a traditional equitable proceeding. The statute contains no requirement that the attorney general show the inadequacy of legal remedies. This Court will not impose such a requirement. The point is denied.

**B.**

Next, Wilcox argues that Section 407.025.1 limits relief to those circumstances in which someone purchases merchandise for household or personal use, citing *Jackson v. Charlie's Chevrolet,* 664 S.W.2d 675 (Mo.App. 1984).

*Charlie's Chevrolet* deals with a private right of action created by Section 407.025.1. That statute permits "[a]ny person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers an ascertainable loss ... as a result of [an unlawful practice to] bring a private civil action ... to recover actual damages." The legislature did not impose a similar requirement of purchase for personal or household use as a condition precedent to the attorney general's exercise of power to obtain relief. Section 407.100. The point is denied.

**C.**

Wilcox next asserts that the trial court erred in permitting certain live and deposition testimony at trial.

First, Wilcox claims that any witness testifying in an action brought by the attorney general for civil fines or any injunction must have "standing," i.e., must meet Section 407.025.1 requirements for bringing a private action. There is no such requirement in the law of evidence. We will not impose one. The point is denied.

Second, Wilcox argues that the testimony of the witnesses constituted improper lay opinion as to whether the solicitation was deceptive. While some of the witnesses may have expressed "opinions" as to the nature of the solicitation, in large measure the testimony described the facts about their receipt of the solicitation and their understanding of its meaning. Our review of the testimony convinces us that the witnesses did no more than describe their impression of the solicitation. Lay witnesses may couch their testimony in convenient shorthand, even if it sounds like an opinion. *See Beuttenmuller v. Vess Bottling Co.,* 447 S.W.2d 519, 526 (Mo.1969). The point is denied.

**IV.**

The trial court found that "deception" existed within the meaning of Section 407.020.1 when the State offered proof that the solicitation had the "capacity to deceive."

**A.**

Wilcox offers two inextricably linked arguments regarding the validity of the statute and the propriety of the trial court's finding that his solicitation violated the statute. First, Wilcox argues that the statute is unconstitutionally vague because the word "deception" used in the statute provides no standard and that the "capacity to deceive" standard adopted by the trial court is also itself inadequate and vague. Second, Wilcox argues that a "capacity to deceive" is not the same as "deception," i.e., the standard applied by the trial court was wrong under the statutory language.

The attorney general responds that the statute is not vague because many other jurisdictions, including the federal government, use similar language in statutes designed to protect the public from unscrupulous merchandising practices. In this context, the attorney general says these other statutes give the word "deception" a well-settled meaning. Further, the attorney general argues that these other jurisdictions have universally interpreted their laws to cover anything with a "capacity to deceive" and that our statute means the same thing.

### B.

■ The prohibition against vague state laws arises from the Due Process Clause of the Fourteenth Amendment. The vagueness doctrine has two distinct bases. First, it is unfair to apply a law to a person who could not have determined in advance what conduct the law permitted and prohibited. Persons cannot fairly be required to obey a law so unclear in its terms that it provides no notice of its scope. Second, a vague law provides no standard to guide or restrict enforcement officials. The law must provide some guidance for enforcement officials and courts to lessen the possibility of arbitrary and discriminatory enforcement.

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498–499, 102 S.Ct. 1186, 1193–94, 71 L.Ed.2d 362 (1982), establishes a sliding scale for measuring statutes against the due process clause.

> The degree of vagueness that the Constitution tolerates—as well as the relative importance of fair notice and fair enforcement—depends in part on the nature of the enactment. Thus, economic regulation is subject to a less strict vagueness test because its subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action.... The Court has also expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe. And the Court has recognized that a scienter requirement may mitigate a

law's vagueness, especially with respect to the adequacy of notice to the complainant that [his or her] conduct is proscribed.

Finally, perhaps the most important factor affecting the clarity that the Constitution demands of a law is whether it threatens to inhibit the exercise of constitutionally protected rights.

■ Section 407.020.1 is an economic regulation. The State does not seek criminal sanctions in this case, only civil penalties. On appeal, Wilcox does not claim that the State's actions inhibit the exercise of constitutionally protected rights. For these reasons, the less restrictive test approved in *Flipside* applies. The statute is unconstitutional only if a business person of reasonable intelligence would fail to understand the broad nature of the acts the statute prohibits. A statute meets this test if the words used to describe prohibited acts possess a commonly understood meaning.

■ In *Shaw*, 847 S.W.2d at 775, this Court held that deception is a species of common law fraud, that "Section 407.020 draws on the common law of fraud in determining which practices it considers unlawful," and that "the legislature's use of language so steeped in the common law does not violate constitutional requirements of specificity." Thus, we do not believe that the broad meaning of "deception" is lost on reasonably intelligent business persons. "Deception" contemplates an act designed to deceive, to cheat someone by inducing their reliance on clever contrivance or misrepresentation. It is not a word hidden from common understanding.

We hold, as we did in *Shaw*, that "deception" has a commonly understood meaning to persons of reasonable intelligence. Its use in Section 407.020.1 does not violate due process.

### C.

There remains the matter of the trial court's reliance on a "capacity to deceive standard" for determining whether Wilcox' solicitation violated Section 407.020.1 and as a basis for civil penalties and injunctive relief. Our analysis necessarily hinges on the

language of Section 407.020.1 which, by its own terms, is violated when "deception" is employed "in connection with the sale or advertisement of any merchandise."

The attorney general argues that "capacity to deceive" is the standard in at least twenty-one states and in federal law. The vast majority of the foreign cases on which the attorney general relies, however, found their decisions on statutes that expressly invoke federal law as definitive of the meaning of the state statute.[2] Thus, the attorney general's argument is persuasive only to the extent that the Missouri statute is susceptible to such an interpretation. For the reasons that follow, Missouri law is different and the authority from other states loses its persuasive force.

Many states have enacted laws to protect consumers from unscrupulous business practices. Many of these states' statutes are "little F.T.C. acts," modeled after the Federal Trade Commission Act, which prohibits "unfair and deceptive acts and practices." 15

U.S.C. 45(a)(1). Federal courts have interpreted "unfair and deceptive acts" to include acts that have the "capacity to deceive." *Vacu–Matic Carburetor Co. v. Federal Trade Commission,* 157 F.2d 711, 713 (7th Cir. 1946); *American Life & Accident Ins. Co. v. Federal Trade Comm'n,* 255 F.2d 289, 293 (8th Cir.1958), *cert. denied,* 358 U.S. 875, 79 S.Ct. 115, 3 L.Ed.2d 105 (1958).

In 1967, Missouri joined the states whose legislatures had enacted statutes to protect consumers from fraudulent business practices. From 1967 until 1986, Missouri law expressly invoked the federal law and by that reference incorporated the meaning of the federal law into Missouri law. Section 407.-020(1), RSMo 1978. In 1986, the legislature removed any reference to federal law from Missouri law, instead granting the attorney general authority to promulgate rules setting out the exact scope of Missouri's law and the meaning of the words employed in the Merchandising Practices Act. The attorney gen-

**2.** The attorney general cites the following cases: Alaska: *State v. Oneil Investigations,* 609 P.2d 520 (1980) (interprets two FTC cases); California: *People v. Dollar Rent–a–Car Systems, Inc.,* 211 Cal.App.3d 119, 259 Cal.Rptr. 191 (1989) (construes statute as adopting the "capacity to deceive" standard); Connecticut: *Aurigemma v. Arco Petroleum Products Co.,* 734 F.Supp. 1025 (D.Conn.1990) (statute specifically refers courts to FTC decisions as guidelines in construing the terms deceptive and unfair); Hawaii: *Eastern Star, Inc. v. Union Building Materials,* 6 Haw. App. 125, 712 P.2d 1148 (Hawaii Ct.App.1985) (statute specifically refers the court to prior FTC decisions in determining what is unfair or deceptive); Idaho: *State ex. rel. Kidwell v. Master Distributors, Inc.,* 101 Idaho 447, 615 P.2d 116 (1980) (court relied on "persuasive federal precedent" in construing the terms of statute); Illinois: *People ex. rel. Fahner v. Walsh,* 122 Ill. App.3d 481, 77 Ill.Dec. 691, 461 N.E.2d 78 (1984) (statute directs courts to look to FTC decisions); Iowa: *State ex. rel. Miller v. Hydro Mag Ltd.,* 436 N.W.2d 617 (1989) (statute codifies common law fraud and eliminates the requirements for reliance and damages); Kansas: *State ex rel. Sanborn v. Koscot Interplanetary, Inc.,* 212 Kan. 668, 512 P.2d 416 (1973) (statute cited in case repealed—case offers no support for a "capacity to deceive" standard); Maine: *State v. Chamber,* 522 A.2d 362 (1987) (statute refers the courts to the FTC decisions); Maryland: *Consumer Protection Division v. Consumer Publishing Company,* 304 Md. 731, 501 A.2d 48 (1986) (statute specifically states that violation occurs when act has "capacity, tendency or effect of deceiv-

ing"); Minnesota: *Claybourne v. Island,* 414 N.W.2d 449 (Minn.Ct.App.1987) (statute provides a "likelihood of confusion" standard); New Jersey: *Fenwick v. Kay American Jeep, Inc.,* 72 N.J. 372, 371 A.2d 13 (1977) (statute expressly eliminates the requirement to prove actual deception); New Mexico: *Page & Wirtz Construction Company v. Solomon,* 110 N.M. 206, 794 P.2d 349 (1990) (statute employs "may, tends to, or does deceive" language); New York: *State by Abrams v. Management Transition Resources, Inc.,* 115 Misc.2d 489, 454 N.Y.S.2d 513 (Spr. Term, 1982) (judicial adoption of capacity to deceive standard); North Carolina: *Pearce v. American Defender Life Ins. Co.,* 316 N.C. 461, 343 S.E.2d 174 (1986) (judicial adoption of the capacity to deceive standard); Texas: *Better Business Bureau of Metropolitan Houston, Inc. v. Medical Directors, Inc.,* 681 F.2d 397 (1982) (statute applies FTC cases); Washington: *Testo v. Russ Dunmire Oldsmobile, Inc.,* 16 Wash.App. 39, 554 P.2d 349 (1976) (statute requires that "deceptive" be construed in concert with FTC decisions); Wisconsin: *State v. American TV & Appliance,* 140 Wis.2d 353, 410 N.W.2d 596 (1987) (case does not stand for "capacity to deceive" standard); South Carolina: *State ex rel. McLeod v. Brown,* 278 S.C. 281, 294 S.E.2d 781 (1982) (judicial decision to be guided by FTC decisions); Pennsylvania: *Zimmerman v. Bell Tel. Co. of Pa.,* 121 Pa.Cmwlth. 642, 551 A.2d 602 (1988) (statute adopts a "likelihood of confusion" standard); Vermont: *Poulin v. Ford Motor Company,* 147 Vt. 120, 513 A.2d 1168 (1986) (statute refers courts to FTC decisions for definition of the term deceptive).

eral did not promulgate regulations for four years. During this four year gap, Wilcox sent his Telco solicitations to Missouri.

Given this legislative history, we conclude that at the time of Wilcox' acts the common law meaning of "deception" limited the reach of Section 407.020.1 to cases of actual deception. As a species of fraud deception is present only where the recipient of a solicitation is deceived, i.e., acts in reliance on the statement the State claims is deceptive. *See Heberer v. Shell Oil Co.*, 744 S.W.2d 441, 443 (Mo. banc 1988) (listing the nine elements of fraud). We find no basis in the statute as it existed at the time of Wilcox' activities that would permit a trial court to impose civil penalties where a solicitation has only a "capacity to deceive." Rather, the statutory language requires actual deception.

In this case the trial court found that several persons were "initially deceived" by Wilcox' solicitation. However, all of these witnesses ultimately "determined that the solicitation was not a bill and, therefore, did not pay the same." The trial court did not find actual deception; it found no more than a capacity in the solicitation for "initial deception." For the reasons expressed, we hold that this standard is contrary to the statute extant in 1986 and insufficient as a basis for the imposition of civil penalties.

Moreover, we are aware of no argument that would support reading the statute differently where the attorney general seeks injunctive relief. The trial court erred in founding its injunction on the solicitation's "capacity to deceive." The statute applicable to Wilcox' activities also requires actual deception before an injunction is appropriate.

Because the trial court employed an incorrect legal standard in holding as it did, the attorney general will be permitted to put on evidence of actual deception on remand to the extent that such evidence is available.

## V.

The judgment of the trial court is reversed. The cause is remanded for further proceedings consistent with this opinion.

COVINGTON, C.J., and HOLSTEIN, BENTON, PRICE and LIMBAUGH, JJ., concur.

THOMAS, J., concurs in result in part and concurs in part in separate opinion filed.

APPENDIX A

---

**TELCO NATIONAL BUSINESS DIRECTORY**
PAYMENT CENTER #714
350 S. FIGUEROA ST., SUITE 117-714
LOS ANGELES, CA 90071

#18 **FINAL NOTICE**

PLEASE RETURN BY ___10/29/86___

314-●-●

CLASSIFICATION

**ACCOUNTANTS**

JEFFERSON CITY          MO 65101

REFER TO THIS NUMBER
IN ANY CORRESPONDENCE.
REF. # 017538

THIS IS NOT AN INVOICE. USE THIS FORM TO PLACE YOUR ORDER.

- - - - DETACH TOP PORTION AND MAIL - - - -

| QTY. | DESCRIPTION REMARKS | COST | TOTAL PRICE |
|------|---------------------|------|-------------|
| | TELCO NATIONAL BUSINESS DIRECTORY | $24.95 | $24.95 |
| | POSTAGE & HANDLING | 2.00 | 2.00 |
| | **TOTAL** | | $26.95 |

**TELCO NATIONAL BUSINESS DIRECTORY AND AT&T ARE NOT AFFILIATED**

MAKE CHECK PAYABLE TO
**TELCO DIRECTORIES PAYMENT CENTER #714**
350 S. FIGUEROA ST., SUITE 117-714, LOS ANGELES, CA 90071

KEEP THIS PORTION FOR YOUR RECORDS          REF. # 017538

---

THOMAS, Judge, concurring in result in part and concurring in part.

The majority finds that the word "deception" as used in section 407.020.1, RSMo 1986, does not go beyond common law fraud. If one were writing on a clean slate, this determination would be proper and even desirable. However, this finding ignores the history of the statute.

I.

The majority opinion references the history of the statute in discussing the "capacity to deceive" standard. Until 1986, Missouri law incorporated the meaning of federal law rather than common law to interpret "deception." § 407.020(1), RSMo 1978. In 1986, the legislature removed the reference to federal law and authorized the attorney general to promulgate regulations setting the scope of Missouri's law and the meaning of the words used. In 1990, the attorney general

promulgated regulations explaining that the statute prohibits "a representation or statement of fact in an advertisement that is false or has the capacity to mislead prospective purchasers." The current federal standard is a new interpretation which prohibits a misrepresentation that is likely to mislead a consumer acting reasonably under the circumstances and that is material (i.e., is likely to lead to injury). *In re Cliffdale Associates, Inc.,* 103 F.T.C. 110, 164 (1984); *accord Kraft, Inc. v. F.T.C.,* 970 F.2d 311, 314 (7th Cir.1992).

It is clear that when the legislature removed the reference to federal law from the statute the legislature intended to break with the existing federal interpretation. It is equally clear that by leaving the development of standards to the attorney general the legislature did not intend to revert to the common law interpretation. What is not clear is what standard was intended to prevail during the four years the attorney general was developing standards. It is unlikely that the legislature contemplated a period as long as four years without regulations. I do not believe it intended that the meaning of the word "deception" would "accordion" in and out as the majority opinion holds, contracting to common law fraud pending the development of regulations by the attorney general and then expanding to whatever meaning the attorney general finally prescribes for deception once those regulations are adopted. A reasonably intelligent business person would be unsure of the meaning of the term "deception" during this interim period. For that reason, "deception" as used in the statute at the times relevant to this case was unconstitutionally vague.

## II.

The analysis above does not change the result in the majority opinion. A defendant whose conduct falls within the "core" of the law may not challenge the law as vague even though the law's mandate is unclear in other areas. Given the history of the statute, it is clear that "deception" includes common law fraud. The statute is not vague in this respect. It is vague because it is not clear how far it reaches beyond that common law defi-

nition. I concur in the remand to the trial court to allow the attorney general the opportunity to prove common law fraud.

## III.

I concur in the remainder of the opinion.