STATE of Wisconsin, Plaintiff-Appellant,

v.

AMERICAN TV & APPLIANCE OF MADISON,
INC., Defendant-Respondent.†

Court of Appeals

*No. 85–2066. Submitted on briefs November 17, 1986.—Decided
June 4, 1987.*

(Also reported in 410 N.W.2d 596.)

† Petition to review granted.

For the plaintiff-appellant the cause was submitted on the briefs of *Bronson C. La Follette,* attorney general, *James D. Jeffries,* assistant attorney general, *Stephen J. Nicks,* assistant attorney general, and *Barbara W. Tuerkheimer,* assistant attorney general.

For the defendant-respondent the cause was submitted on the brief of *Wayne E. Babler, Jr., C. Vernon Howard,* and *Nancy K. Peterson,* and *Stroud, Stroud, Willink, Thompson & Howard,* of Madison.

Before Gartzke, P.J., Dykman and Eich, JJ.

GARTZKE, P.J. The state appeals from an order dismissing its complaint against American TV & Appliance of Madison, Inc. The complaint alleges that an American TV radio advertisement contained untrue, deceptive or misleading statements of fact, contrary to sec. 100.18(1), Stats., and was a plan or scheme, the purpose of which was not to sell the merchandise as advertised, contrary to sec. 100.18(9).[1]

[1]Section 100.18(1), Stats., provides in pertinent part:

> No person, firm, corporation or association, or agent or employee thereof ... shall make, publish, disseminate, circulate, or place before the public, or cause, directly or indirectly, to be made, published, disseminated, circulated, or placed before the public, in this state, in a newspaper, magazine or other publication, ... or over any radio or television station, or in any other way similar or dissimilar to the foregoing, an advertisement, announcement, statement or representation of any kind to the public relating to such ... sale, ... use or lease of ... merchandise, ... which advertisement, announcement, statement or representation contains any assertion, representation or statement of fact which is untrue, deceptive or misleading.

Sec. 100.18(9)(a) provides in part:

> It is deemed deceptive advertising, within the meaning of this section, for any person or any agent or employe thereof to make, publish, disseminate, circulate or place before the public in this

The complaint sought civil forfeitures and an injunction.[2] American TV moved to dismiss the complaint for failure to state a claim. Sec. 802.06(2)(f), Stats. 1983. The trial court granted the motion. We conclude that the complaint states a claim and therefore reverse.

Whether a complaint states a claim is a question of law for our independent review. *Williams v. Security Savings & Loan Ass'n,* 120 Wis. 2d 480, 482–83, 355 N.W.2d 370, 372 (Ct. App. 1984). "The facts pleaded and all reasonable inferences from the pleadings are admitted to be true, but only for purpose of testing the legal sufficiency of the claim, not for the purpose of trial." *Scarpaci v. Milwaukee County,* 96 Wis. 2d 663, 669, 292 N.W.2d 816, 819 (1980). Our concern is only with whether the facts alleged, if proved, state a claim, not with whether the plaintiff can prove its case. *Williams,* 120 Wis. 2d at 483, 355 N.W.2d at 372. 

Because the purpose of a complaint is to give notice of the nature of a claim, the complaint need not state all the facts which must eventually be proved. *Anderson v. Continental Ins. Co.,* 85 Wis. 2d 675,

state in a newspaper or other publication ... or over any radio or television station or in any other way similar or dissimilar to the foregoing, an advertisement, announcement, statement or representation of any kind to the public relating to the ... sale, hire, use or lease of ... merchandise, ... which advertisement, announcement, statement or representation is part of a plan or scheme the purpose or effect of which is not to sell, purchase, hire, use or lease the ... merchandise, ... as advertised.

[2]A civil forfeiture of not less than $50 nor more than $200 may be imposed for each violation of sec. 100.18(1), Stats. Sec. 100.26(4), Stats. A person violating sec. 100.18(9), Stats., may be fined not less than $100 nor more than $1,000, or imprisoned for not more than one year or both. Sec. 100.26(5).

683–84, 271 N.W.2d 368, 372–73 (1978). It must be read liberally in favor of the plaintiff, *Scarpaci,* 96 Wis. 2d at 669, 292 N.W.2d at 819, and will be dismissed only if it appears to a certainty that no relief can be granted. *Williams,* 120 Wis. 2d at 483, 355 N.W.2d at 372.

## COMPLAINT

The complaint alleges that between January 7 and 12, 1985 American ran the following advertisement 164 times on 22 radio stations:

> There are lots of good quality washers and dryers on the market. But when you ask which ones [sic] the best automatic washers and dryers, well it's simple. There's Speed Queen, Maytag, and all the rest. Sears makes good washers and dryers there are lots of other good brands. [sic] But the best washers and dryers are made by Maytag and Speed Queen. And at American we have both of them and they're on sale for our January white sale. A clearance sale on the finest washers and dryers you can buy. This week a Speed Queen washer and dryer set is reduced to $499. This week you can buy the finest for less than $500. Both the Speed Queen washer and dryer set for $499. Speed Queen, the choice of more commercial laundra-mats [sic] than any other washer because they last. Because Speed Queen uses the same transmission in home washers as they use in commercial washers. When it comes to washers and dryers, there's Maytag, Speed Queen and all the rest. And during American's closeout January white sale, you can buy the best like a Speed Queen washer and dryer pair for $499 at American. Why pay more at Sears.

The sale period was January 9 to January 13, 1985. The Speed Queen washer and dryer set adver-

tised for $499 cost American $520. Eleven days before its advertising campaign, American ordered twenty such sets, of which ten were to be delivered on January 4 and ten were to be delivered on January 14, 1985. The same day American ordered the twenty sets, it ordered 133 additional but more expensive Speed Queen washer and dryer sets. Of those 133 sets, 65 were the "next step up," had more features, had more sophisticated appearances than the twenty other sets, and cost American $518.00, $2.00 less than the advertised items. The remaining 68 of the 133 sets were of an even "higher step quality" and cost American as much as $604.00.

American's commission structure pays a salesperson a commission only for selling an item for more than its wholesale cost. American's salespersons therefore made no commissions on the $499 sets, since they sold for $21 less than American's cost. American's four stores sold only four of the advertised $499 sets during the sale. The four sales occurred during the last two days of the sale. American sold an unspecified but "much larger number" of unadvertised washer and dryer sets at a price above cost.

The complaint alleges that the advertisement purports to be a bona fide offer of sale but that American's primary aim was to induce persons interested in buying washer and dryer sets to visit its stores in order to sell them more expensive unadvertised sets and to discourage the sale of the advertised $499 sets.

According to the complaint, the advertisement's inherent deception and American's intent and motivation to discourage purchase of the advertised $499 sets are evinced by the following facts: (1) American lost money on each sale of a $499 set, (2) American ordered a disproportionate number of unadvertised sets, (3)

American sold only four of the advertised sets, (4) a discrepancy existed between the appearance and performance of the $499 sets and the quality represented in the advertisement, in that the $499 sets had an appearance and quality below that advertised and were plain and lacked features found in other models, (5) American's salespersons were not paid for selling a $499 set, (6) American's salespersons were trained and attempted to direct customers to unadvertised models whether or not customers asked to see those models, and (7) credit card purchasers could not buy a $499 set but could buy the more expensive washers and dryers.

### FIRST CLAIM—SECTION 100.18(1), STATS.

The state argues that the advertisement contained untrue, deceptive or misleading statements of fact in three respects: (1) the appearance and performance of the $499 set was not the "best" and "finest," as advertised; (2) no "clearance" or "closeout" sale was held; and (3) the advertisement purported to be a bona fide offer to sell a Speed Queen washer and dryer set for $499, but American's aim was not to sell the "bait" at that price, but to lure persons interested in buying washers and dryers to stores to sell them unadvertised sets at higher prices.

The trial court concluded that a reasonable reading of the advertisement is that it announced a general sale of Maytag and Speed Queen washers and dryers including one set for $499, and that the words "best," and "finest," and "clearance," and "closeout," in the context of a "January white sale," are "hyperbole and puffery." Since the complaint fails to allege that no sale occurred or that a customer could not buy a set for $499, the court held there was no basis for a

claim that the advertisement was untrue, deceptive or misleading. We disagree.

We first examine the "best and "finest" descriptions in the advertisement, which the trial court excused as puffing. Section 100.18(1), Stats., condemns all untrue, deceptive or misleading statements in advertising. It contains no express exception for puffing. If, however, as we conclude, American's advertisement fails to qualify as puffing, then we need not decide whether the statute impliedly excludes puffing from its prohibition.

According to Rosden, *The Law of Advertising* sec. 10.06[1] at 10–26 (1986), at common law, "a seller who merely puffs his merchandise is not guilty of actionable misrepresentation." Rosden states that the trouble with the common law rule is that too many different interpretations of puffing exist. Rosden describes puffing generally as "exaggerated sales talk or opinion." *Id.* at sec. 18.06[4] at 18–108.

In *Better Living, Inc., et al.,* 54 F.T.C. 648 (1957), the Federal Trade Commission defined puffing in greater detail. Holding that advertising a product as sold at the "world's lowest prices" was not puffing, the FTC said:

> Puffing, as we understand it, is a term frequently used to denote the exaggerations reasonably to be expected of a seller as to the degree of quality of his product, the truth or falsity of which cannot be precisely determined. In contrast thereto, the representation as to "the world's lowest price" is a statement of an objective actuality, the truth or falsity of which is not variable and can be ascertained with factual precision. This representation cannot, therefore, properly be termed "puffing." It

is either true, or it is false; and, accordingly, such a determination must be made.

54 F.T.C. at 653.

The FTC's definition was made in a regulatory context, the Federal Trade Commission Act, 15 U.S.C. sec. 45 et seq. The definition provides a practical test for puffing and already applies to many Wisconsin advertisers. We therefore apply it to American's advertisement.

The advertisement focuses on a Speed Queen $499 washer and dryer set. It can be read to represent that the $499 set is the "best" or "finest" Speed Queen set. That representation was made even though American had ordered an additional 133 Speed Queen sets consisting of two models which were superior in quality to or had more features than the $499 sets.

If a merchant sells the product line of a single manufacturer consisting of models having different qualities, and one of those models is described as the "best" and "finest," the truth or falsity of that statement in most instances can be determined relative to the other models in the same line. That determination is sufficiently precise for the FTC definition, since the class of products is small and the qualities can be easily ranked. Indeed, we infer from the complaint that Speed Queen already ranked the models American purchased for the sale and that American knew it. Consequently, the statement in American's advertisement that the $499 sets were the "best" or "finest" was not necessarily puffing. The complaint states a claim in this respect under sec. 100.18(1), Stats.

361

Having just concluded that the complaint states a claim, we could ignore the state's remaining bases for the claim and reverse the trial court's order. However, to avoid a possible second appeal and to provide guidance to the trial court, we address the state's contentions that the complaint states a claim in other respects.

We therefore examine the "clearance" or "closeout" sale references in the advertisement. Section 100.18(1), Stats., does not prohibit the advertising of clearance or closeout sales, unless the advertisement is untrue, deceptive or misleading. A common understanding of "clearance" or "closeout" sale is that it is one in which a merchant disposes of all of the merchant's existing stock or all of one line of the merchant's existing stock.[3] A finder of fact could determine that if, as the complaint alleges, American ordered merchandise specifically for its purported "clearance" or "closeout" sale, its advertisement contained untrue assertions, contrary to sec. 100.18(1).

We reject the trial court's holding that the reference to a "closeout" or "clearance" sale in conjunction with "our January white sale" saved the advertisement from untruthfulness. The court did not explain why this is the case. No reason for that ruling occurs to us. Perhaps a factual basis for the ruling will be disclosed at trial. Meanwhile, we conclude that the complaint states a claim under sec. 100.18(1), Stats.,

[3] *Webster's Third New Dictionary* (1976) defines "clearance sale" as a "sale usually at reduced prices of stock (as excess inventory) which it is desired to move from the store." A "closeout" sale is similarly defined as "a clearing out by a sale usually at reduced prices of the whole remaining stock whether of a closing of a business or of a particular discontinued item."

for an untrue statement based on American's description of its sale as a "closeout" or "clearance."

American nevertheless argues that the complaint is defective because it fails to allege that the words "clearance" or "closeout" had an effect or consequence. American argues that if the words "clearance" and "closeout" do not materially induce a consumer's decision to buy, those words are not deceptive even if they are false. American relies on *Federal Trade Com. v. Colgate-Palmolive Co.,* 380 U.S. 374, 386–87 (1965), to support that proposition. However, the *Colgate-Palmolive* Court held that if an advertisement is deceptive, the FTC could reasonably infer that the deception would be a material factor in a purchaser's decision to buy. For that reason, the Supreme Court held that the FTC need not conduct a survey of the public before it could determine that certain advertisements had a tendency to mislead. 380 U.S. at 391–92.

Similarly, a finder of fact could reasonably infer from American's representation of the sale as a "clearance" or "closeout" that the advertisement would be a material factor in a purchaser's decision to buy, if that is, as American puts it, a critical issue.

We do not agree that the "material factor" issue exists. Section 100.18(1), Stats., unqualifiedly prohibits any assertion, representation, or statement of fact which is untrue, deceptive, *or* misleading. If American's advertisement is false, whether it is deceptive or misleading has no effect upon the violation. The statute is silent as to the effect on consumers.

■

We reject the state's theory that because American's intent was to induce buyers to come to its stores to buy sets more profitable than the $499 sets, the

advertisement contains statements of fact which are untrue, deceptive, or misleading, for the purposes of sec. 100.18(1), Stats. The complaint shows on its face that the sale was held and that the $499 sets were available at that sale. In this respect, the facts alleged do not state a claim based on sec. 100.18(1).

## SECOND CLAIM—SECTION 100.18(9), STATS.

The state contends that because the advertisement "is part of a plan or scheme, the purpose or effect of which is not to sell ... the ... merchandise ... as advertised," the advertisement is "deemed deceptive," contrary to sec. 100.18(9)(a), Stats. The state contends that far from being a bona fide offer to sell the $499 sets, the advertisement was part of a plan or scheme to use those sets as "bait" and to "switch" purchasers to more expensive Speed Queen washer and dryer sets.

No Wisconsin "bait and switch" cases have been decided under sec. 100.18(9), Stats. The parties agreed that the trial court should consider the guides established by the Federal Trade Commission, 16 C.F.R. secs. 238.0 through 238.4.[4] Since the "bait advertising"

---

[4] 16 C.F.R. sec. 238.0 through 238.4 provides:

**Sec. 238.0 Bait advertising defined.**

Bait advertising is an alluring but insincere offer to sell a product or service which the advertiser in truth does not intend or want to sell. Its purpose is to switch consumers from buying the advertised merchandise, in order to sell something else, usually at a higher price or on a basis more advantageous to the advertiser. The primary aim of a bait advertisement is to obtain leads as to persons interested in buying merchandise of the type so advertised.

**Sec. 238.1 Bait advertisement.**

No advertisement containing an offer to sell a product should be published when the offer is not a bona fide effort to sell the advertised product.

described in 16 C.F.R. sec. 238.0 comes within the "plan or scheme" condemned by sec. 100.18(9), we agree that the FTC guides may be helpful.

**Sec. 238.2 Initial offer.**

(a) No statement or illustration should be used in any advertisement which creates a false impression of the grade, quality, make, value, currency of model, size, color, usability, or origin of the product offered, or which may otherwise misrepresent the product in such a manner that later, on disclosure of the true facts, the purchaser may be switched from the advertised product to another.

(b) Even though the true facts are subsequently made known to the buyer, the law is violated if the first contact or interview is secured by deception.

**Sec. 238.3 Discouragement of purchase of advertised merchandise.**

No act or practice should be engaged in by an advertiser to discourage the purchase of the advertised merchandise as part of a bait scheme to sell other merchandise. Among acts or practices which will be considered in determining if an advertisement is a bona fide offer are:

(a) The refusal to show, demonstrate, or sell the product offered in accordance with the terms of the offer,

(b) The disparagement by acts or words of the advertised product or the disparagement of the guarantee, credit terms, availability of service, repairs or parts, or in any other respect, in connection with it,

(c) The failure to have available at all outlets listed in the advertisement a sufficient quantity of the advertised product to meet reasonably anticipated demands, unless the advertisement clearly and adequately discloses that supply is limited and/or the merchandise is available only at designated outlets,

(d) The refusal to take orders for the advertised merchandise to be delivered within a reasonable period of time,

(e) The showing or demonstrating of a product which is defective, unusable or impractical for the purpose represented or implied in the advertisement,

(f) Use of a sales plan or method of compensation for salesmen or penalizing salesmen, designed to prevent or discourage them from selling the advertised product.

The trial court held that the complaint alleges no acts covered by the FTC guides in 16 C.F.R. sec. 238.3(a) through (e) and that to infer from the facts pleaded that such acts had occurred would be to speculate. It concluded that although subparagraph (f) could apply, it does not, since the advertisement covers a sale on Maytag and Speed Queen washers generally, a sale which even includes a $499 set. The court concluded that no reasonable inference could be drawn that the advertisement was part of a bait and switch plan or scheme, and absent an allegation that a bait and switch had in fact occurred to a customer, the complaint failed to state a claim under sec. 100.18(9), Stats.

The trial court gave too much weight to the FTC guides. The FTC adopted the guides in connection

**Sec. 238.4 Switch after sale.**

No practice should be pursued by an advertiser, in the event of sale of the advertised product, of "unselling" with the intent and purpose of selling other merchandise in its stead. Among acts or practices which will be considered in determining if the initial sale was in good faith, and not a strategem [sic] to sell other merchandise, are:

(a) Accepting a deposit for the advertised product, then switching the purchaser to a higher-priced product,

(b) Failure to make delivery of the advertised product within a reasonable time or to make a refund,

(c) Disparagement by acts or words of the advertised product, or the disparagement of the guarantee, credit terms, availability of service, repairs, or in any other respect, in connection with it,

(d) The delivery of the advertised product which is defective, unusable or impractical for the purpose represented or implied in the advertisement.

NOTE: *Sales of advertised merchandise.* Sales of the advertised merchandise do not preclude the existence of a bait and switch scheme. It has been determined that, on occasions, this is a mere incidental byproduct of the fundamental plan and is intended to provide an aura of legitimacy to the overall operation.

(Footnote omitted.)

with the Federal Trade Commission Act, 15 U.S.C. sec. 45(a)(1), which prohibits unfair methods of competition and unfair or deceptive acts in commerce. The guides do not have the force and effect of law but are merely interpretive. *State v. Amoco Oil Co.,* 97 Wis. 2d 226, 242, 293 N.W.2d 487, 495 (1980). The lead paragraph to the "bait advertising" guides described in 16 C.F.R. sec. 238.3(a)–(f) shows that they are not exclusive indicia of a bait and switch. Hence, a factfinder could determine on the basis of an act or practice not described in the FTC guides that a plan or scheme existed, the purpose or effect of which is not to sell merchandise as advertised, contrary to sec. 100.18(9)(a), Stats.

We disagree with the trial court's discussion of the guide described in 16 C.F.R. sec. 238.3(f). Under that guide, the use of a sales plan which discourages sales personnel from selling an advertised product may be considered when determining whether a bona fide offer was made. Although both Maytag and Speed Queen sets were on sale, the advertisement focused on a $499 Speed Queen washer and dryer set. The guide described in 16 C.F.R. sec. 238.3(f) applies.

The comparatively low number of $499 sets purchased by American in anticipation of the sale, combined with a commission plan under which sales persons earned nothing by selling a $499 set and the fact that credit was not available for the $499 set, give rise to a reasonable inference that American's purpose was not to sell the $499 sets but to sell the more expensive sets. That is enough to establish a violation of sec. 100.18(9)(a), Stats.

We reject the conclusion that in the absence of allegations in the complaint that a bait and switch had in fact occurred to a particular customer, the

complaint failed to state a claim under sec. 100.18(9), Stats. That conclusion would limit a violation to a plan or scheme, the effect of which is not to sell the merchandise as advertised. The statute prohibits a plan or scheme when either its purpose or effect is not to sell the merchandise.

American contends that the language of sec. 100.18(9), Stats., indicates that a violation does not occur unless specific conduct, words or omissions discourage the sale of the advertised product. It argues that the words "plan" or "scheme," assume acts directed toward the consumer and not just a seller's state of mind. It notes that if intent alone violates the statute, then it prosecutes persons for what they think rather than for what they do. The argument fails. Section 100.18(9) does not prosecute a seller's state of mind. It prosecutes a seller who makes, publishes, etc., an advertisement, announcement, statement or representation of any kind which is part of a plan or scheme, the purpose of which is not to sell the merchandise as advertised. The statute therefore requires an act accompanied by a particular state of mind.

Because we conclude that the complaint states claims under subsecs. 100.18(1) and (9), Stats., the order dismissing the complaint must be reversed.

*By the Court.*—Order reversed and cause remanded for further proceedings.

EICH, J. (*dissenting*). The state's complaint charges that American's radio advertisement, quoted in its entirety in the majority opinion, was "untrue, deceptive or misleading" and that it was part of a "plan or scheme ... not to sell ... the ... merchandise

... as advertised." Secs. 100.18(1) and (9)(a), Stats. The majority agrees that the ad is susceptible to both charges.

If American's ad is untrue, deceptive or misleading, so are most advertisements and merchandising slogans of the 1980's. In my view, the ad does no more than state that Maytag and Speed Queen washers and dryers are "the best" and "the finest," and that one can buy a Speed Queen washer and dryer set at American for $499. I do not believe it can be reasonably read to represent that the $499 Speed Queen is the best or finest of all washers or dryers everywhere in the world—or even the best of the Speed Queen line. Rather, I agree with the trial court that:

> The reasonable reading of the ad is that the sale on Maytag and Speed Queen washers and dryers generally, even includes one available set as low as $499.00. Not even the most suspicious competitor or least sophisticated consumer could conclude that the defendant was offering the "best", "finest" or most functional Speed Queen set for $499.00. In context, $499.00 was clearly the bottom of the sale, not the top; it was the lowest one could pay for purportedly one of the two "best" and "finest" lines of washers and dryers. Therefore, "[w]hy pay more at Sears."

A "hype," yes; but it is no more than "puffery"; and puffing one's wares has never been thought to be a punishable deceptive practice. Indeed, were the state's view to prevail, I assume Chicagoans would no longer be able to read the "World's Greatest Newspaper" or Milwaukeeans drink that city's "Finest Beer." The possibilities are endless. But the law has long recognized that puffery is not deception, and it is not a violation of the statute.

369

Nor do I share the majority's belief that the state has adequately stated a claim that use of the terms "clearance sale" and "closeout January white sale" is misleading and untrue simply because American ordered merchandise specifically for the sale. Whether some or all of the sale merchandise was already on hand, or whether some or all was ordered for the sale, does not, in my opinion, make the ad's use of the words "clearance" or "closeout" a lie.

Finally, the majority agrees with the state that the ad is deceptive because it is part of a "scheme ... not to sell the merchandise as advertised"—a "bait and switch" scheme designed to lure the customer into the store with the promise of a $499 set, and, once there, to pressure him or her into buying a more expensive model. The majority offers two basic reasons for its conclusion: (1) American had only twenty of the $499 sets and many more of the more expensive models on hand; and (2) under the store's sales commission plan, salespeople would not earn commissions on the $499 sets.

Both parties referred the trial court to the FTC guidelines as instructive on the "bait-and-switch" issue. The state and the majority, however, now assert that the guidelines are not quite as instructive as the court found them to be. I agree with the trial court that, giving the state's complaint the benefit of all reasonable inferences, only one of the six FTC elements is implicated: "Use of a sales plan or method of compensation for sales[persons] or penalizing sales[persons], designed to prevent or discourage them from selling the advertised product." The complaint does not allege violation of the other guidelines—that American refused to sell or take orders for the

370

advertised sets, that the sets were unavailable, or that American employees "disparaged" them to customers.

I simply do not believe that American's sales commission structure, by itself, must necessarily cause every advertised sale of an item at or below cost to be a deceptive practice in violation of secs. 100.18(1) and (9)(a), Stats. The additional fact that fewer $499 sets were available than more expensive models does not persuade me otherwise, nor do the other claims offered by the state "on information and belief" in its complaint.[1]

Again, I agree with the trial court that most contemporary marketing techniques will offend someone's sensibilities, and that American's are no exception. Indeed, one would think that its scream-and-shout advertising style would keep as many people away from the store as it attracts in. But, as Judge Jones noted, that fact should not be sufficient to subject it to a lawsuit for deception.

---

[1]When conclusions and matters stated only on information and belief are cleansed from the state's complaint, only the following factual allegations remain: (1) American ordered twenty $499 sets and 133 higher-priced sets for the sale; (2) some of the higher-priced sets actually cost American $2 less than the $499 sets; and (3) the $499 sets are plainer in appearance and lack many features found on the higher-priced models.

The complaint also charges "on information and belief" that American would lose money on sales of the $499 sets and thus its salespeople would earn no commissions on such sales; that American sold more higher-priced sets than $499 sets; that the sales staff was trained to show higher-priced sets to customers; and that credit cards were accepted only for purchases of the higher-priced sets. Even giving credence to these "information and belief" allegations, I continue to believe that the trial court correctly decided the case.

I would affirm the trial court's dismissal of the complaint for failure to state a claim.