STATE of Wisconsin, Plaintiff-Appellant, †

v.

AMERICAN TV & APPLIANCE OF MADISON, INC., Defendant-Respondent-Petitioner.

Supreme Court

*No. 85–2066. Argued September 6, 1988.—Decided November 2, 1988.*

(Also reported in 430 N.W.2d 709.)

† Motion for reconsideration denied, without costs.

For the defendant-respondent-petitioner there were briefs by *Wayne E. Babler Jr., Nancy K. Peterson* and *Quarles & Brady,* Milwaukee, and *C. Vernon Howard* and *Stroud, Stroud, Willink, Thompson & Howard,* Madison, and oral argument by *Mr. Babler.*

For the plaintiff-appellant the cause was argued by *Barbara W. Tuerkheimer,* assistant attorney general, with whom on the brief was *James D. Jeffries,* assistant attorney general, and *Donald J. Hanaway,* attorney general.

WILLIAM G. CALLOW, J. This is a review of a published decision of the court of appeals, *State v. American TV,* 140 Wis. 2d 353, 410 N.W.2d 596 (Ct. App. 1987). That decision reversed an order of the circuit court for Dane county, Judge P. Charles Jones, granting a motion to dismiss the state's complaint for failure to state a claim in this forfeiture action. We reverse the decision of the court of appeals because the state cannot prevail, even if the facts alleged in the complaint are true.

The state filed a complaint against American TV & Appliance of Madison, Inc., (American) alleging that in January, 1985, American ran the following radio advertisement one hundred sixty-four times on twenty-two radio stations:

> "There are lots of good quality washers and dryers on the market. But when you ask which ones [sic] the best automatic washers and dryers, well it's simple. There's Speed Queen, Maytag and all the

rest. Sears makes good washers and dryers there are lots of other good brands. But the best washers and dryers are made by Maytag and Speed Queen. And at American we have both of them and they're on sale for our January white sale. A clearance sale on the finest washers and dryers you can buy. This week a Speed Queen washer and dryer set is reduced to 499. This week you can buy the finest for less than $500. Both the Speed Queen washer and dryer set for 499. Speed Queen, the choice of more commercial laundra-mats than any other washer because they last. Because Speed Queen uses the same transmission in home washes [sic] as they use in commercial washers. When it comes to washers and dryers, there's Maytag, Speed Queen and all the rest. And during American's closeout January white sale you can buy the best like a Speed Queen washer and dryer pair for 499 at American. Why pay more at Sears."

The state contends that this advertisement violated secs. 100.18(1) and (9)(a), Stats. The complaint alleges that American ordered twenty of these $499 Speed Queen sets at a cost of $520 per set. In addition, the complaint alleges that American ordered one hundred thirty-three more expensive washer and dryer sets. Sixty-five of these sets contained more features and were "visually more sophisticated" than the $499 sets. American purchased these for $518. The other sixty-eight sets cost American up to $604 and were of an even higher quality. The complaint states that, although American sold only four of the $499 sets during the sale, the state "believes that a much larger number" of the more expensive sets were sold. In addition, American sold a large number of non-Speed Queen washers and dryers at higher prices.

The complaint also alleges that American employs a commission system under which a salesperson receives commission only on the sale of items at a price greater than the wholesale cost. Since American sold these sets at $21 below cost, the salespersons received no commission on their sale.

The state's complaint alleges that the advertisement is not a bona fide offer to sell the $499 set and that American used the advertisement to induce potential buyers to come to the store where it discouraged the purchase of the $499 set and tried to sell the more expensive unadvertised sets. The state alleges that the following eight indicia reveal American's deceptive intent: (1) the loss of money on sales of the $499 set; (2) the disproportionate number of unadvertised sets purchased for sale; (3) the disproportionate number of unadvertised sets sold; (4) the large expense of advertising a set upon which American would lose money; (5) the plain appearance of the $499 set and the lack of certain features found in more expensive sets, even though the $499 set was advertised as the "best" and "finest"; (6) the commission structure discouraging sales of the $499 set; (7) the training received by sales persons encouraging them to direct customers to the more expensive models; and (8) the fact that American did not permit credit card purchases of the $499 set.

Based upon these allegations, the state, in its complaint, makes two claims for relief. First, it claims that the advertisement is untrue, deceptive or misleading in violation of sec. 100.18(1), Stats.[1] Second, it

---

[1] Section 100.18(1), Stats., provides: "**Fraudulent representations.** (1) No person, firm, corporation or association, or agent or employe thereof, with intent to sell, distribute, increase the

claims that the advertisement is a part of a plan or scheme, the purpose or effect of which is not to sell the merchandise as advertised, in violation of sec. 100.18(9)(a).[2]

consumption of or in any wise dispose of any real estate, merchandise, securities, employment, service, or anything offered by such person, firm, corporation or association, or agent or employe thereof, directly or indirectly, to the public for sale, hire, use or other distribution, or with intent to induce the public in any manner to enter into any contract or obligation relating to the purchase, sale, hire, use or lease of any real estate, merchandise, securities, employment or service, shall make, publish, disseminate, circulate, or place before the public, or cause, directly or indirectly, to be made, published, disseminated, circulated, or placed before the public, in this state, in a newspaper, magazine or other publication, or in the form of a book, notice, handbill, poster, bill, circular, pamphlet, letter, sign, placard, card, label, or over any radio or television station, or in any other way similar or dissimilar to the foregoing, an advertisement, announcement, statement or representation of any kind to the public relating to such purchase, sale, hire, use or lease of such real estate, merchandise, securities, service or employment or to the terms or conditions thereof, which advertisement, announcement, statement or representation contains any assertion, representation or statement of fact which is untrue, deceptive or misleading."

[2]Section 100.18(9)(a), Stats., provides: "It is deemed deceptive advertising, within the meaning of this section, for any person or any agent or employe thereof to make, publish, disseminate, circulate or place before the public in this state in a newspaper or other publication or in the form of book, notice, handbill, poster, bill, circular, pamphlet, letter, sign, placard, card, label or over any radio or television station or in any other way similar or dissimilar to the foregoing, an advertisement, announcement, statement or representation of any kind to the public relating to the purchase, sale, hire, use or lease of real estate, merchandise, securities, service or employment or to the terms or conditions thereof which advertisement, announcement, statement or representation is part of a plan or scheme the purpose or effect of which

The circuit court dismissed both counts set forth in the complaint. It concluded that the advertisement is not deceptive under sec. 100.18(1), Stats., because the advertisement, reasonably read, promotes a sale on Maytag and Speed Queen washers and dryers generally. The advertisement does not say that the "best" washer and dryer set in the world is the particular Speed Queen model sold for $499. Further, the use of the words "best," "finest," and "clearance" are merely examples of hyperbole and puffery.

With regard to sec. 100.18(9)(a), Stats., the circuit court concluded that the pleaded facts did not give rise to a reasonable inference that the advertisement was part of a plan or scheme to bait customers into the store and switch them to more expensive models. "Absent some pleaded facts that this in fact occurred to a consumer" the complaint fails, the circuit court concluded.

The court of appeals reversed. With regard to sec. 100.18(1), Stats., it disagreed with the circuit court about the reasonable reading of the advertisement. It concluded that the advertisement can be read to represent that the $499 set is the "best" or "finest" model made by Speed Queen; and the truth or falsity of that assertion can be determined by examining other models in the product line. Further, the court of appeals held that it was possible for a finder of fact to conclude that the use of the words "clearance" and "closeout" was misleading. *American TV,* 140 Wis. 2d at 361–63.

The court of appeals also reversed the circuit court's dismissal of the claim under sec. 100.18(9)(a),

---

is not to sell, purchase, hire, use or lease the real estate, merchandise, securities, service or employment as advertised."

Stats. It rejected the circuit court's assertion that the claim must allege that a bait and switch occurred to a particular customer. Instead, it held that the facts alleged lead to a "reasonable inference that American's purpose was not to sell the $499 sets but to sell the more expensive sets. That is enough to establish a violation of sec. 100.18(9)(a), Stats." *American TV,* 140 Wis. 2d at 367.

The issue before this court is whether the state's complaint states a claim upon which relief can be granted. For the purpose of determining whether a complaint should be dismissed, "[t]he facts pleaded and all reasonable inferences from the pleadings must be taken as true." *Morgan v. Pennsylvania General Insurance Co.,* 87 Wis. 2d 723, 731, 275 N.W.2d 660 (1979). The motion to dismiss tests the legal sufficiency of the complaint. *Anderson v. Continental Insurance Co.,* 85 Wis. 2d 675, 683, 271 N.W.2d 369 (1978). The claim is dismissed only when "'it is quite clear that under no conditions can the plaintiff recover.'" *Morgan,* 87 Wis. 2d at 731, quoting Clausen and Lowe, *The New Wisconsin Rules of Civil Procedure—Chapters 801–803,* 59 Marq. L. Rev. 1, 54 (1976).

I. *False, Deceptive, or Misleading Advertisements.*

We first address the legal sufficiency of the claim based upon sec. 100.18(1), Stats. There are two elements to this offense: There must be an advertisement or announcement, and that advertisement must contain a statement which is "untrue, deceptive or misleading." The state maintains that American violated this provision both by the use of the terms "best" and "finest" and by the use of the words "clearance"

300

and "closeout" in describing the sale on washers and dryers.

The state contends that American used the words "best" and "finest" to assert that the $499 washer and dryer set is the single finest set in the world. It then concludes that this is a statement of fact which can be shown to be false simply by comparing the set to better models in the Speed Queen line. This is not a reasonable interpretation of the advertisement. It is clear that the words "best" and "finest" refer to the brands of Maytag and Speed Queen. The first half of the advertisement does not mention the $499 set. Instead, it asserts that, although there are many good brands of washers and dryers, Speed Queen and Maytag are the "best." The advertisement goes on to tell consumers that they can buy one model of these fine brands for $499. "This week *a* Speed Queen washer and dryer set is reduced to $499." (Emphasis added.) The conclusion drawn by the state is not reasonable.

Given that the advertisement asserts that Maytag and Speed Queen are the best brands, we must conclude that the state cannot state a claim for relief based upon sec. 100.18(1), Stats. The assertion is not a statement of fact which can be proven false. Rather, it is an example of puffery, long considered an acceptable advertising technique. As no Wisconsin cases have addressed this issue, we turn for guidance to federal law.

The Federal Trade Commission (FTC) defined puffery in *Better Living, Inc., et al.,* 54 F.T.C. 648 (1957), *aff'd.,* 259 F.2d 271 (3d Cir. 1958). "Puffing, as we understand it, is a term frequently used to denote the exaggerations reasonably to be expected of a seller

as to the degree of quality of his product, the truth or falsity of which cannot be precisely determined." *Id.* at 653. A general statement that one's products are best is not actionable as a misrepresentation of fact. The FTC made this clear in a case very similar to the present one. In *Sterling Drug, Inc., et al.,* 102 F.T.C. 395, 752 (1983), the FTC held that Bayer's claim that it produced "the world's best aspirin" was not capable of being substantiated or refuted and thus was an example of lawful puffery. Similarly, in *Marcyan v. Nissen Corp.,* 578 F. Supp. 485 (N.D. Ind. 1982), *aff'd,* 725 F.2d 687 (7th Cir. 1983), the court held that statements such as defendant's claim that its exercising machines were the best of their type were "not actionable as false advertisement. These are, at worst, merely considered as 'puffing.'" *Id.* at 507 (citation omitted).

Just as the use of the words "best" and "finest" cannot form the basis for a claim under sec. 100.18(1), Stats., in this case, neither can the use of the words "clearance" and "closeout." The court of appeals concluded that, because American ordered merchandise specifically for this sale, the representation that the sale was a "closeout sale" is false or deceptive. This conclusion does not follow from the evidence alleged. As Judge Eich urged in his dissent, "[w]hether some or all of the sale merchandise was already on hand, or whether some or all was ordered for the sale, does not, in my opinion, make the ad's use of the words 'clearance' or 'closeout' a lie." *American TV,* (Eich, J., dissenting) 140 Wis. 2d at 370. American's advertisement suggests that it had stock on hand which it was attempting to sell during the sale. It does not matter under sec. 100.18(1), when that stock was

purchased. There is nothing deceptive about this use of these words in this case.

With regard to the use of both the terms "best" and "finest" and the terms "closeout" and "clearance," the state simply has not stated a claim upon which relief can be granted. Even if all of the allegations pleaded are taken as true, it is quite clear that the state cannot prevail under sec. 100.18(1), Stats.

II. *Bait and Switch.*

The state's second claim for relief is based upon sec. 100.18(9)(a), Stats. There are three elements which must be alleged to state a claim under this provision. First, there must be an advertisement. Second, there must be a plan or scheme of which the advertisement is a part. Third, the purpose or effect of this plan must be to not sell the product as advertised.

The state insists that American violated this provision because its advertisement induced customers to visit the stores and then it switched them from the $499 set to more expensive models. The state bases its claim on the eight indicia of intent which, it claims, reveal a purpose not to sell the $499 set as advertised.

Missing from the complaint are allegations tending to prove that, apart from any purpose not to sell the merchandise as advertised, there was a plan or scheme to carry out such a purpose. The state's complaint is more conspicuous by what it does not allege than by what it does allege. It does not allege that the $499 sets were not available to customers. It does not allege that the $499 sets were not sold to customers. To the contrary, it acknowledges four sets *were* sold. It does not allege that the sets displayed were defective. It does not allege that salespersons discouraged any actual customers from buying the

$499 model and then switched them to more expensive models. The complaint does not allege any improper overt act.

The complaint does not allege anything except that there were incentives for American to try to sell the more expensive models and that, in fact, it stocked and sold more of those models. All profit motivated retailers recognize these incentives and hope to sell their more profitable items, if possible. Section 100.18(9)(a), Stats., cannot be interpreted to make unlawful such an incentive. The statute requires a plan or scheme which is not demonstrated in this complaint.

Notwithstanding this deficiency in its complaint, the state attempts to rely upon FTC cases and guides for support of its position. It does so to no avail. The cases upon which the state relies do not find the existence of bait and switch merely from the kind of indicia of intent listed by the state. Indeed, the state recognizes that the federal cases often focus on disparagement of the advertised product, and it argues that disparagement occurred in this case. It contends that the $499 set was "plain" and lacked many features found in the more expensive models, and thus disparaged itself.

This contention is without merit. The federal cases relied upon by the state, in which the merchandise was found to be self-disparaging, involve defective or poor quality merchandise. In *Household Sewing Machine Co.*, 52 F.T.C 250, 263–64 (1955), the advertised sewing machine would not perform certain advertised functions and was exceptionally noisy. Similarly, in *Carpets "R" Us, Inc., et al.*, 87 F.T.C. 303,

320–21 (1976), the carpet was of a "poor" quality and appearance. In both cases there was also verbal disparagement by salespersons. *Id.* at 320; *Household Sewing,* 52 F.T.C at 263. By contrast, the state alleges neither verbal disparagement nor defective merchandise. "Plainness" does not constitute defectiveness. The federal cases simply do not support the state's claim.

The state further contends that American disparaged the set by displaying it next to the more sophisticated models. This argument, too, must be rejected. The state points to *Southern States Distributing Co., et al.,* 83 F.T.C. 1126, 1166 (1973), in which swimming pool salespersons induced customers to switch from an economy pool to a deluxe pool by exhibiting two models side by side. However, the FTC's opinion makes it clear that the side-by-side exhibition itself was not the deceptive act. It was that Southern States had constructed the two models in such a way as to misleadingly embellish the expensive model. *Id.* at 1167.

The state also relies upon *Carpets "R" Us,* 87 F.T.C at 320, 321, and *Wilbanks Carpet Specialists, Inc., et al.,* 84 F.T.C. 510, 520 (1974), claiming that side-by-side exhibitions of products disparaged the lower priced items. However, unlike the perfectly functional, albeit plain, washer and dryer set in this case, the lower priced carpets in those cases were of poor quality and disparaged themselves.

Sec. 100.18(9)(a), Stats., does not require a retailer to display different items in a product line in separate areas of the store out of fear that the less expensive models will compare unfavorably. Side-by-side exhibition, far from being evidence of a bait and switch plan,

is helpful to consumers. It enables them to balance price differences with feature differences in order to arrive at the most efficient decision for them, given their tastes and resources.

Failing in its attempt to show disparagement, the state also argues that a showing of disparagement is not needed. Instead, it insists that a finding of bait and switch may be inferred from the advertisement itself and minimal sales resulting from it. It relies upon cases such as *Central Carpet Corp., Inc.,* 85 F.T.C 1022 (1975), and *Tashof v. Federal Trade Commission,* 437 F.2d 707 (D. C. Cir. 1970). What these cases conclude, however, is that, in addition to minimal sales of the product, the court must find bait advertising. *Id.* at 710; *Central Carpet,* 85 F.T.C at 1037–38.

The cases demonstrate that a bait advertisement is one which is false or misleading. In *Tashof,* 437 F.2d at 709, an advertisement offering glasses "complete" for $7.50 was misleading bait advertising because this price applied only to customers who had their own prescriptions. The supposedly "complete" package did not include a free eye examination as some signs and flyers indicated. *Id.* Similarly, in *Central Carpet,* 85 F.T.C at 1031, the advertisement itself was deceptive as "the carpeting was not suitable for the uses for which advertised."

The FTC and federal courts have not made a finding of bait and switch simply on the basis of a low number of sales resulting from a *true* advertisement. As we stated above, American's advertisement is not false or misleading and, hence, is not bait advertising. These cases are not applicable to this case.

The FTC Guides in 16 C.F.R. sec. 238.3 (1988) likewise do not support the state's position. As this

court noted in *State v. Amoco Oil Co.*, 97 Wis. 2d 226, 243, 293 N.W.2d 487 (1980), the Guides are interpretive rules which "do not carry the force and effect of law." Section 238.3 of the Guides reads as follows:

**"Discouragement of purchase of advertised merchandise.**

"No act or practice should be engaged in by an advertiser to discourage the purchase of the advertised merchandise as part of a bait scheme to sell other merchandise. Among acts or practices which will be considered in determining if an advertisement is a bona fide offer are:

"(a)  The refusal to show, demonstrate, or sell the product offered in accordance with the terms of the offer,

"(b)  The disparagement by acts or words of the advertised product or the disparagement of the guarantee, credit terms, availability of service, repairs or parts, or in any other respect, in connection with it,

"(c)  The failure to have available at all outlets listed in the advertisement a sufficient quantity of the advertised product to meet reasonably anticipated demands, unless the advertisement clearly and adequately discloses that supply is limited and/or the merchandise is available only at designated outlets,

"(d) The refusal to take orders for the advertised merchandise to be delivered within a reasonable period of time,

"(e)  The showing or demonstrating of a product which is defective, unusable or impractical for the purpose represented or implied in the advertisement,

"(f)  Use of a sales plan or method of compensation for salesmen or penalizing salesmen, de-

307

signed to prevent or discourage them from selling the advertised product."

The circuit court correctly determined that the first five acts listed in sec. 238.3 are the very type of overt acts which the state, in its complaint, has not alleged. Only subparagraph (f), referring to the use of a commission system, applies to this case.

■

The existence of a commission system is not determinative evidence of a bait and switch plan or scheme. Commission systems merely reflect the general profit motivation which governs all retail operations. Consequently, the federal cases which discuss a commission plan as evidence of bait and switch also rely upon many other evidences of a plan or scheme which are not present in this case. For example, in *Southern States,* 83 F.T.C at 1166, in addition to the commission system, there was actual product disparagement. *See also Carpets "R" Us,* 87 F.T.C at 320–21 (finding both verbal disparagement and self-disparagement of the product). Neither the federal cases nor Guides support the state's position.

■

The state's allegations are not sufficient to state a claim under sec. 100.18(9)(a), Stats. While it has demonstrated that American had an incentive to sell the more expensive items, it has not made any allegations supporting the existence of a plan or scheme.

For the reasons set forth, we conclude that the state's complaint fails to state a claim upon which relief can be granted.

*By the Court.*—The decision of the court of appeals is reversed.

308

STEINMETZ, J. (dissenting). I would affirm the decision of the court of appeals which reversed the trial court's order of dismissal and remand for further proceedings. I would hold that the state's complaint states a cause of action under secs. 100.18(1) and 100.18(9)(a), Stats.

Although the majority sets forth the correct standard to be used in determining whether a motion to dismiss should be granted, it fails to apply that standard to the complaint in this case. As this court has historically and repeatedly held, when a party moves to dismiss a complaint for failure to state a claim under 802.06(2)(f), Stats., the issue is not whether the plaintiff can prove the case as pled. *Morgan v. Pennsylvania General Ins. Co.,* 87 Wis. 2d 723, 731, 275 N.W.2d 660 (1979). *Int'l Found. Emp. Ben. Plans v. Brookfield,* 74 Wis. 2d 544, 549, 247 N.W.2d 129 (1976). Rather, the issue is whether the complaint is legally sufficient to state a claim. *Scarpaci v. Milwaukee County,* 96 Wis. 2d 663, 669, 292 N.W.2d 816 (1980). The facts alleged in the complaint and all reasonable inferences from the pleadings must be viewed as true. *Id.; Anderson v. Continental Ins. Co.,* 85 Wis. 2d 675, 683, 271 N.W.2d 368 (1978). Legal conclusions and unreasonable inferences need not be accepted as true, *Hartridge v. State Farm Mut. Auto. Ins. Co.,* 86 Wis. 2d 1, 4–5, 271 N.W.2d 598 (1978), but once pleaded, the facts and any reasonable inferences from these facts must be accepted as true until resolved by the finder of fact. *Evans v. Cameron,* 121 Wis. 2d 421, 426, 360 N.W.2d 25 (1985).

A claim should not be dismissed under sec. 802.06(2)(f), Stats., unless "it appears to a certainty" that the plaintiff cannot prevail even if the alleged facts are proven. *Morgan,* 87 Wis. 2d at 732, 275

N.W.2d 660 *citing,* Wright and Miller, 5 *Federal Practice and Procedure,* sec. 1215, p. 113. A complaint is legally insufficient only if it is "'quite clear' that under no conditions can the plaintiff recover." *Quesenberry v. Milwaukee County,* 106 Wis. 2d 685, 690, 317 N.W.2d 468 (1982).

As to the claim under sec. 100.18(1), Stats., that the advertisement was untrue, deceptive, or misleading, the state's complaint was sufficient and should have survived the motion to dismiss on two individual bases. "[E]ven 'if there is no dispute in the testimony a question of fact is presented if different inferences may be drawn ....'" *Schmidlkofer v. Industrial Comm.,* 265 Wis. 535, 538, 61 N.W.2d 862 (1953). As this court has recognized in other causes of action, the truthfulness of the representation or statement remains a question of fact for the jury. *Peil v. Kohnke,* 50 Wis. 2d 168, 197, 184 N.W.2d 433 (1971) (whether a representation in an insurance policy was fraudulent is a question fact). *See also* Wis. J.I.—Civil No. 2401-2403 and 2500.

First, the ad directly stated that the "finest" and "best" Speed Queen set could be bought for under $500. Secondly, the complaint set forth facts which indicated American's sale was not a clearance or closeout sale. Both of these assertions in the ad could be viewed as untrue, deceptive and misleading.

The ad directly stated that the finest and best Speed Queen could be bought for under $500. The ad did not, as the majority asserts, "tell consumers that they can buy one model of these fine brands for $499." Majority at 301.

The radio advertisement stated: "This week you can buy the finest for less than $500." Later the ad stated, "And during American's closeout January

white sale you can buy the best like a Speed Queen washer and dryer pair for 499 at American." The complaint alleged that American also sold other Speed Queen washer and dryer sets. These other sets contained more features and were visually more sophisticated than that which American advertised as the best and finest. In fact, the sets American called the best and finest cost American $84 less than another set it sold.

The complaint alleged facts sufficient to show that the ad may be considered untrue, deceptive and misleading. If all reasonable inferences are viewed as true, it becomes even more clear that the motion to dismiss should have been denied.

In addition, the ad should be considered as a whole. *Avis Rent A Car System, Inc. v. Hertz Corp.*, 782 F.2d 381, 385 (2d Cir. 1986). American's advertisements were broadcast over the radio. Consumers do not have time to closely scrutinize the ad and therefore the ad must be read as a whole, as it would be heard by the average radio listener. Each line of the ad cannot be viewed as a separate statement.

The majority also asserts that the words "clearance" and "closeout" cannot be the basis of a claim under sec. 100.18(1), Stats. The majority reasoned that it did not matter under sec. 100.18(1), when the stock was purchased, and, therefore American's use of the words "clearance" and "closeout" was not untrue, deceptive or misleading. The majority is correct insofar as it states that it does not matter when the stock was purchased. But what does matter is whether the complaint alleged facts from which it could be reasonably inferred that this was not a clearance or closeout sale. Stated another way, the only issue is whether the complaint alleged facts sufficient to reasonably infer

311

that the ad was false. Many merchants have sales, but a clearance or closeout sale is a specific type of sale, at which customers expect a better than normal sale price. Such prices are the result of the merchant's desire to no longer handle that line of product.

In this case, either the sale was a clearance or closeout sale or it was not. It defies logic for a merchant to specifically purchase items for the clearance or closeout sale. Although the facts alleged in the complaint indicate the advertisement was untrue, deceptive and misleading, this is a question of fact and therefore not appropriately dismissed by this court. Even though the state is entitled to all reasonable inferences from the facts in the complaint, the majority concluded that in the future merchants can use these terms as they please, with no regard for the every day meaning of these words.

Next, the majority believed that the complaint was legally deficient in alleging a cause of action under sec. 100.18(9)(a), Stats. The majority then sets out three elements which must be pled, one of which is a "plan or scheme" of which the advertisement is a part. The majority concludes by stating that the complaint does not allege any "improper overt act."

A cause of action based on sec. 100.18(9)(a), Stats., does not require facts to show the defendant's improper overt act. In light of Wisconsin's rules of notice pleading, sec. 100.18(9)(a) only requires that a plaintiff allege facts from which it can be reasonably inferred that such a plan or scheme exists. It is inconceivable that such a plan or scheme cannot be reasonably inferred from the complaint which alleged: (1) American's purchase of only 20 washers while running the

advertisement 164 times;[1] (2) American's cost was $21 over the selling price; (3) American's purchase of 133 more expensive washer-dryer sets; (4) American sold only four of the sets in its four stores; and (5) the salesperson's commission structure which provided no commissions on these sets. The majority incorrectly concludes that no plan or scheme could even reasonably be inferred from the complaint.

The majority also mentions that the FTC Guides, 16 C.F.R. sec. 238.3 (1988), aid in determining whether a certain practice is violative of sec. 100.18(9)(a), Stats. The majority concedes that sec. 238.3(f) of the Guides was alleged by the state. However, 238.3(c) provides:

> "(c) The failure to have available at all outlets listed in the advertisement a sufficient quantity of the advertised product to meet reasonably anticipated demands, unless the advertisement clearly and adequately discloses that supply is limited and/or the merchandise is available only at designated outlets."

American's advertisement contained no limitation. American ran 164 advertisements on 22 radio stations, yet American ordered only 20 of the advertised sets. The question of whether American ordered a sufficient quantity of the washer-dryer sets to meet reasonably anticipated demands is a matter of proof.

Because the allegations in the complaint do provide sufficient facts from which it could be reason-

---

[1] In response to a civil investigative demand served on the defendant before the complaint was filed, defendant, under oath, provided the state with these numbers. However, in its response to the state's first set of interrogatories, provided after the hearing on defendant's motion to dismiss, the defendant corrected the information—the ad was run over 1,150 times during this five-day period at a cost of over $21,000.

ably inferred that secs. 100.18(1) and 100.18(9)(a), Stats., were violated, I would affirm the court of appeals which reinstated the complaint.

I am authorized to state that CHIEF JUSTICE NATHAN S. HEFFERNAN and JUSTICE SHIRLEY S. ABRAHAMSON join this dissenting opinion.